ALFRED B. HARVEY *vs.* WILLIAM H. VARNEY & others.

A contract, whether executed or executory, for the conveyance of either real or personal property to conceal it from attachment by the grantor's creditors, although voidable by them, is good between the parties, even if the grantee shared in the fraudulent intent.

The fraudulent character of the purpose of a partnership as to creditors is no defence to a bill in equity by one of its members against the others for a settlement of the affairs of the firm.

BILL IN EQUITY by one member of a partnership under the style of Varney & Harvey, against William H. Varney, Thomas J. Hunt, John Lane and Henry Hunt, as his copartners in the manufacture and sale of boots and shoes, alleging that they wrongfully withheld from the complainant his interest in the partnership property, and particularly in certain promissory notes alleged to have been given by Peter Semonin to Thomas J. Hunt in consideration of the transfer to Semonin of an interest in the goods and business of the firm in Evansville, Indiana, where, as also at New Orleans in Louisiana, and Abington in Massachusetts, it was alleged that such business was carried on; and praying for the appointment of a receiver.

At the hearing in this court, before *Foster*, J., the respondents, not having set up any such defence in their answer, contested the prayer of the bill on the ground that the purpose of the partnership was fraudulent, and introduced evidence to show that it was formed for the purpose of transferring to it the property of a former firm of Hunt & Lane, which consisted of the respondents Lane and Thomas J. Hunt, and which was insolvent at the time of the transfer; and that this transfer was to defraud the creditors of that firm.

The evidence was reported, and the case reserved for the determination of the full court. The material facts appear in the opinion.

*E. Avery & G. M. Hobbs,* for the complainant.

*H. C. Hutchins & W. A. Wheeler,* for the respondents.

FOSTER, J. The results at which the court have arrived upon the several questions of fact in the present cause may be very

briefly stated. We do not regard it as either necessary or useful to do more than announce our conclusions upon such subjects, without supporting them by exposition or argument. We find :

1. That a copartnership existed between the plaintiff and defendants in equity ;

2. That Henry Hunt was admitted as a partner into the firm August 12, 1861 ;

3. That the business carried on at Evansville, Indiana, by John Lane and by Thomas J. Hunt was for and on account of said firm ; and that, after the transfer to Peter Semonin, all the interest in the business carried on by Semonin which was represented either by Thomas J. Hunt or Henry Hunt belongs to said firm. So far as either of the defendants in this suit has received any of the proceeds of said business at Evansville, it must be accounted for under the present bill. Whether any further decree can be made touching this branch of the business is a question reserved till the coming in of the master's report.

4. That the business at New Orleans carried on by John Lane was for and on account of said firm.

5. We are satisfied that the firm of Varney & Harvey was formed in part at least for the purpose of transferring to it the property of the former firm of Hunt & Lane in order to hinder, delay and defraud its creditors ; that the property sold to it by Hunt & Lane was intended to be concealed and covered up from attachment; and that the interest of Hunt & Lane in the new copartnership of Varney & Harvey was kept secret, and their names were omitted from the books of the new firm as copartners, with the same view and design ; and that all this was done with the knowledge and participation of the plaintiff.

These facts being established, it is insisted on behalf of the defendants that the whole business was fraudulent and illegal, and that a court of justice will not interfere, between parties equally guilty, to adjust their controversies and apportion the shares to which they are respectively·entitled accruing from a fraudulent, illegal and immoral enterprise. The principle invoked is well established, founded upon the highest considerations of

public policy, and its maintenance is essential to the dignity of judicial tribunals. Within proper limitations it receives our cordial assent. We should also be disposed to hold that an illegality or immorality of this description need not be pleaded in defence, but may be taken advantage of whenever it appears in the course of a trial; and that the court in its discretion may interpose and refuse to investigate transactions which involve moral turpitude and are unfit subjects of judicial inquiry and determination. The rule established as to mere private frauds, that they must be alleged and proved by the party who complains of them, does not seem to obtain in this class of cases. But the applicability of the principle to a case like the present is the question chiefly debated at the bar, and upon which we have bestowed careful consideration.

In this Commonwealth a long series of cases has established the rule that a transfer either of real or personal property, made with a view to defraud the creditors of the grantor, although the grantee has participated in this intent, is good between the parties, and void as against creditors only; or, to speak accurately, is voidable by creditors at their election. If no creditors intervene, the conveyance stands; if creditors elect to affirm the transfer and receive the consideration, it is thereby ratified and confirmed. Payment of the grantor's debts to the full value of the property purges the fraud. *Drinkwater* v. *Drinkwater*, 4 Mass. 354. *Oriental Bank* v. *Haskins*, 3 Met. 332. *Crowninshield* v. *Kittridge*, 7 Met. 520. This doctrine is not restricted to executed contracts; but such as are executory merely are likewise treated as valid between the original parties, although they were entered into for the purpose of keeping the creditors of the vendor from attaching the property. *Knapp* v. *Lee*, 3 Pick. 452. In *Dyer* v. *Homer*, 22 Pick. 253, this precise point was decided, and it was held that a note given for the price of chattels sold for the express purpose of keeping them from attachment by the creditors of the vendor, who by agreement retained possession of the property after the sale, was valid, and that the sale itself between the parties must be treated as fair and obligatory. This case was twice before the court, the first

opinion being pronounced by Mr. Justice Morton in 1839, and the second by Chief Justice Shaw in 1840; both announcing the same doctrines and fully stating the reasons in their support. It was declared that the parties to a contract cannot be allowed to defeat it by alleging their own fraud; that the transaction was not *turpis causa* and therefore void, but was valid until avoided, and that the note given for the price was good in the hands of the vendors, and could be enforced for the residue, after a partial failure of consideration caused by a levy on a portion of the property sold by a creditor of the vendor. See also *The Lion*, 1 Sprague, 40. These authorities are decisive of the law in this Commonwealth and render it unnecessary to make a particular examination of the cases elsewhere, cited by the defendant. A few observations will suffice.

So far as opposite views are expressed in *Smith* v. *Hubbs*, 1 Fairf. 71, decided in 1833, they must be regarded as overruled by *Nichols* v. *Patten*, 18 Maine, 229–238, decided in 1841, in which the same court adopted the rule held in Massachusetts, and supported their conclusion by the decisions in this state.

The decision of Chancellor Kent in *St. John* v. *Benedict*, 6 Johns. Ch. 111, that specific performance will not be decreed in equity of an agreement intended to hinder, defeat or defraud the creditors of the plaintiff, proceeds upon the well understood principle that a bill for specific performance is addressed to the sound judicial discretion of the court. By implication this case recognizes the rule that such a contract is not in law absolutely void.

*Nellis* v. *Clark*, 20 Wend. 24, was decided in the supreme court of New York in 1838, by Mr. Justice Cowen and Mr. Justice Bronson, and sustains the position which the present defendants maintain. But a dissenting opinion was delivered by the third judge, Chief Justice Nelson, now of the supreme court of the United States, the reasoning and conclusions of which commend themselves to our judgment in preference to the opinion of the majority of that court.

One case in our own reports requires examination. *Canton* v. *Dorchester*, 8 Cush. 525. There the controversy was, in

which of two towns a pauper had his legal settlement, and the defendants maintained that his father had acquired one in Canton by having an estate of inheritance or freehold in that town and living on the same three years successively. It appeared that he had such an estate in the right of his wife, and lived thereon for the required period, but that before the three years were completed the husband and wife conveyed it away. The defendants undertook to prove that this deed was made to protect the estate from attachment by the husband's creditors, and offered secondary evidence that a written instrument was given by the grantee acknowledging the trust and agreeing to reconvey the estate on demand. This they contended showed that the grantors continued to have an equitable freehold in the premises, and that by virtue thereof the husband acquired a settlement. The court held otherwise, rightly declaring that from such a conveyance merely no trust or obligation to reconvey could arise. Then the opinion adds, in a single sentence: "If the instrument given back, which the defendants suppose to have raised a trust, was legally proved by secondary evidence, (a point which we need not decide,) yet it was an executory contract founded on a fraudulent transaction, and no court of equity would enforce it on the application of the grantors." The authorities cited in support of this position are merely to the general doctrine that the discretionary power of a court of chancery to enforce specific performance will not be exercised, where the plaintiff has been guilty of fraud. The only remaining allusion to the question is, "Nor could a court of law sustain an action on it." For this position no authorities are cited. It was a remark not necessary to the decision of the case. To gain the settlement, a valid bond for a deed would not have been enough. *West Cambridge* v. *Lexington,* 2 Pick. 536. The party must have had an equitable freehold as *cestui que trust. Scituate* v. *Hanover,* 16 Pick. 222. Obviously, the question whether a contract to reconvey an estate could be avoided by proving that it and the deed were both given to cover up the property from attachment was not distinctly presented to the court, nor involved in the case under examination. We can

not suppose that it was intended in an incidental and summary manner to overrule the entire current of authorities, and particularly the elaborate and well considered case of *Dyer* v. *Homer*, with the doctrines of which we remain fully satisfied after a careful reconsideration.

The result is, that the defendants in equity cannot be allowed to prove that the stock taken from the old firm of Hunt & Lane by the new firm of Varney & Harvey was transferred to conceal it from attachment; and the notes given therefor are held to be valid.

The question whether an account between the members of the new partnership should be refused, and each be allowed to retain the share which happens to remain in his hands, without regard to equality, depends upon similar principles.

There was no element of illegality or immorality in the business of the firm. Because the plaintiff's interest was that of a silent partner and was kept concealed in order that it might not be attached by his creditors, the defendants who participated in this purpose cannot be allowed to disclose the common fraud of both parties and thereupon appropriate to themselves his share of the capital and profits of the partnership. Except so far as creditors intervene to assert their rights, the interests of the several partners must be adjusted as if no such fraudulent purpose existed. To hold otherwise and to apply to this case the maxim, *in pari delicto potior est conditio defendentis*, would be to exercise rigor beyond the limits of wholesome severity.

*Brooks* v. *Martin*, 2 Wallace, 72, adopts principles far more extensive than those we have found it necessary to affirm for the decision of the present cause.

A decree may be entered appointing a receiver and referring the cause to a master to state an account.