## JAMES M. CRAFTS *vs.* ELIHU BELDEN.

In suing the buyer of goods sold by an insolvent debtor with a view to give an unlawful preference, if the assignee in insolvency joins a count in contract for the price of the goods with a count in tort for their conversion, in the manner permitted by the Gen. Sts. c. 129, § 2, *cl.* 5, that is no waiver of his right to rescind the sale, when it appears that all the counts were intended to disaffirm it; although before bringing the action he made a demand for the price, and although estate of the defendant is attached on the writ.

In an action in which a count in contract is joined, under the Gen. Sts. c. 129, § 2, *cl.* 5. with a count in tort, it is within the discretion of the presiding judge to decide at what stage of the trial the plaintiff must elect on which count he will rely; and his decision is not a subject of exceptions.

If the purchaser of goods sold by an insolvent debtor with a view to give an unlawful preference has reasonable cause to believe that such is the intention of the seller, the sale is void, although the benefit of the preference is to enure to a creditor who by reason of his innocence of the fraud can retain the payment so made upon his debt.

TORT, with a count in contract, by the assignee of Alvin N. Claghorn, an insolvent debtor. Writ dated October 26, 1867 ;

and real estate attached thereon. The declaration contained three counts, for the same cause of action; the first for the conversion of an undivided half of 24,794 lbs. of tobacco, of the property of Claghorn; the second on an account annexed for money had and received to Claghorn's use, being the price of 12,397 lbs. of tobacco at fifteen cents per pound, on February 25, 1866, with interest from that date; the third alleging that Claghorn and the defendant " were tenants in common of 24,794 lbs. of tobacco, each owning one undivided half thereof, and Claghorn was indebted to the defendant, and, being insolvent and with a view to give a preference to the defendant, bargained and sold to the defendant his undivided half of said tobacco, amounting to 12,397 lbs. at fifteen cents per pound, $1859.55, and the defendant received the same, having reasonable cause to believe said Claghorn insolvent and that such conveyance was made in fraud of the laws relating to insolvency, whereby a right of action has accrued to the plaintiff, as assignee of said Claghorn's estate, to have and recover the same with interest since February 25, 1866, the time of said sale." The answer was a general denial of all the allegations in all the counts, with a special averment that the defendant had paid Claghorn for the tobacco mentioned in the account annexed, before the beginning of the proceedings in insolvency.

At the trial in the superior court, *Devens*, J., permitted the plaintiff to introduce all his evidence indiscriminately in support of the several counts, before electing whether to proceed in tort or in contract; contrary to the objection of the defendant, who contended that the plaintiff, by declaring on a count for the price of the tobacco as sold to the defendant, had affirmed the sale, and was limited thereby to proceed in contract; and who further contended that at least the plaintiff should be directed to elect upon which counts he would proceed, before introducing his evidence. The plaintiff, after introducing his evidence. elected to proceed on the count in tort.

The evidence introduced by him included a written contract between Claghorn and the defendant, dated January 31, 1865, which was, in effect, a lease on shares of the defendant's farm

to Claghorn for a year from April 1, 1865, afterwards extended for another year; and also two writings, called bills of sale, dated respectively November 20, 1866, and February 25, 1867, in the first of which Claghorn acknowledged the receipt from the defendant of his note for $340, payable in three months to the order of Caleb L. Thayer, and his other note for $300, payable in four months to Claghorn's order, "it being in part pay for 7500 lbs. of my half of present crop of tobacco, for which I am to be allowed fifteen cents per pound," and in the second of which he acknowledged the receipt from the defendant, in part payment "for the remaining right I have now in the 1866 crop of tobacco raised on his farm," of two of his own notes previously given to the defendant, one of them payable to the defendant's order at the Northampton Bank. It appeared that the notes for $340 and $300, which formed a part of the consideration for the sale of November 20, were given to enable Claghorn to pay a preëxisting debt due from him to Thayer, to whom they were immediately passed in satisfaction of that debt; "and there was evidence tending to show that the consideration was partly in payment of a preëxisting debt due from Claghorn to the defendant; it further appeared that the consideration of the sale of February 25 was to pay preëxisting debts due from Claghorn to the defendant; and the plaintiff contended and introduced evidence tending to show that, when these sales were made, the defendant had reasonable cause to believe that Claghorn was insolvent, and that they were made, in contravention of the insolvent laws, to prefer creditors. No question was raised or submitted to the jury as to Thayer's receiving said notes in contravention of the insolvent laws, or having reasonable cause to believe Claghorn insolvent."

"The plaintiff was duly appointed assignee of Claghorn in insolvency, April 8, 1867. Before the bringing of this action and after April 20, 1867, the plaintiff demanded of Thayer the notes given as a part of the price of the tobacco, as assets belonging to Claghorn's estate, and notified the defendant to pay the same to him. The evidence showed, and it was not disputed, that the plaintiff made a demand for the tobacco upon the defendant April 20, 1867.

" The defendant requested the judge to instruct the jury, **first,** that, the plaintiff understanding all the facts at the time of bringing the action as well as he understands them at the time of the trial, the uniting of counts for the price of the tobacco in this action, and the having, previously to the bringing of the action, made a demand of the notes given for the price of Thayer, and having on the writ attached the property of the defendant to secure his demand, is an affirmation of the sale which he cannot now repudiate and resort to his counts in tort; and second, that if the sale of November 20 was made to enable Claghorn to pay to Thayer, a *bonâ fide* creditor, a preëxisting debt to the amount of $640, and the defendant made the two notes as specified in the receipt of that date, and the notes were immediately received and taken by Thayer in satisfaction of his debt against Claghorn, this action cannot be maintained to the extent of such payment.

" As to the first request, the judge declined so to rule, and instructed the jury that the plaintiff might recover in tort notwithstanding the facts set forth in said request. As to the second request, the judge instructed as requested, adding thereto ' that being the whole transaction, and nothing further being shown;' but further instructed the jury that, if a part of the object of such conveyance was to secure the debt on which the defendant was responsible at the Northampton Bank, Claghorn being then insolvent, and the defendant having reasonable cause to believe him so, then the whole conveyance would be void and the assignee might maintain his action for the full value of the property so conveyed."

The jury returned a verdict for the plaintiff; and the defendant alleged exceptions.

*D. Aiken & W. Griswold,* for the defendant.

*C. Allen & A. De Wolf,* for the plaintiff.

Foster, J. The fact that counts in contract and tort were united in this declaration in the manner permitted by the practice act, Gen. Sts. *c.* 129, § 2, *cl.* 5, cannot be deemed to be a waiver of the right of the plaintiff, as assignee in insolvency, to rescind the sale as fraudulent against the insolvent laws. If

such could ever be the effect of the method of pleading adopted, which we do not intimate, it cannot be in a case like the present, where it satisfactorily appears that all the counts were intended to disaffirm and repudiate the sale. A waiver is an intentional relinquishment of a known right; and the doctrine of *Butler* v. *Hildreth*, 5 Met. 51, is simply that an assignee, who, with knowledge of the facts, has brought an action for the price of goods sold, cannot discontinue it and then sue the purchaser in trover for the value of the goods on the ground that the sale was illegal and consequently a conversion of the property. But the principle of that case has no application to the present. Nor is a mere demand of the price by the assignee an irrevocable affirmation of the sale. The counts in contract were abandoned at the trial, and it was within the discretion of the presiding judge to determine at what stage the plaintiff must elect on which counts he would rely. No exception lies to his decision on this point. *Sullivan* v. *Fitzgerald*, 12 Allen, 482.

The instructions with reference to the fraudulent character of the sale were carefully guarded, and favorable enough to the defendant. If he had reasonable cause to believe that it was the vendor's intent to contravene the insolvent laws, the sale would be void, although the benefit of the preference might enure, not to himself, but to another and wholly *bonâ fide* and innocent creditor who by reason of his innocence could retain the payment. The provisions of the statute are as broad and sweeping as possible, and are levelled against the most indirect and circuitous preferences. Gen. Sts. *c.* 118, §§ 89, 91. If any part of the purpose of the sale or conveyance was fraudulent the whole was void.                    *Exceptions overruled.*