### Case No. 9,418.

#### Ex parte MENDELL.

#### In re BUTLER.

[1 Lowell, 506; [1] 4 N. B. R. 302 (Quarto, 91).]

District Court, D. Massachusetts. 1870.

BANKRUPTCY—MONEY LOANED—PREFERENCE—MORTGAGE.

1. One who lends money to a retail trader within four months of his bankruptcy, and when he was actually insolvent, on a mortgage of his stock in trade, is bound to make some inquiry into his object in raising the money; and if upon the slightest inquiry he could have discovered that the whole purpose was to prefer a creditor, his mortgage may be avoided by the assignee.

[Cited in Ex parte Packard, Case No. 10,650; Ex parte Ames, Id. 323; Bucknam v. Goss, Id. 2,097.]

[Cited in Noble v. Scofield, 44 Vt. 284.]

2. Clauses one and two of the thirty-fifth section of the bankrupt act [of 1867 (14 Stat. 534)], considered. A mortgage given to raise money to pay a creditor by way of preference comes within clause two of section thirty-five.

[Cited in Swan v. Robinson, 5 Fed. 296.]

The stock of goods which came to the possession of the assignee was mortgaged to the petitioner, and by order of court the stock was sold at auction, and the money was paid into the registry subject to all lawful liens. The mortgagee petitioned to have it paid out to him, and the assignee opposed the petition, on the ground that the mortgage was voidable by him under the second clause of the thirty-fifth section of the bankrupt act. The evidence tended to show that Butler was a retail trader, having a shop on Tremont street, Boston, and one at North Cambridge; that his stock in the latter place was mortgaged in May, 1870, but under what circumstances was not shown at this hearing; that

towards the end of June, if not earlier, he found difficulty in meeting his engagements, and some creditors did not obtain prompt payment of their accounts. He was owing one Cushman a balance of about fifteen hundred and eighty-six dollars, on a note which had been given for a stock of goods in April, 1868, and on which he had made many small payments, from time to time. Mr. Cushman asked him for another payment, and he said that he could not make it unless he borrowed the money. Kimball, a clerk or partner of Mr. Cushman, then suggested to Mendell, the now petitioner, that he might invest his money to advantage in a mortgage of Butler's stock, and to Butler that the petitioner would probably lend him the money. He brought the parties together, and the petitioner agreed to lend him $1600. The transaction was concluded, and the money advanced in Cushman's place of business, and Kimball, the clerk or partner, lent the petitioner $600 to make up the sum. The money was paid over by the bankrupt to Cushman in settlement of the old note, but it was not proved that this was done in presence of the mortgagee, or that he was, in fact, fully informed of the nature of the transaction. He made no inquiry into the condition of the mortgagor's affairs, but relied mainly as to security on the advice of Mr. Cushman and Mr. Kimball. Butler asked him to keep the mortgage off the record, because it would injure his credit, and he agreed that he would not record it at once, and so instructed Mr. Kimball, with whom he left the note and mortgage. The stock in trade of Butler was attached about two weeks after, and so remained until he went into bankruptcy on the 26th of August, 1870.

L. W. Howes, for mortgagee.
T. F. Nutter, for assignee.

[1] [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

LOWELL, District Judge. It is plain that the money was raised for the express purpose of paying a pre-existing debt, and the intent to prefer the creditor may be fairly inferred. The only doubt is, whether the mortgagee was a party to the fraud upon the statute, or was kept in the dark by his friends. There is evidence from which it may be argued that he must have understood the scheme, unless he were wilfully blind; but the assignee relies more particularly upon the second clause of the thirty-fifth section of the statute, as imposing such knowledge upon him by operation of law, unless he made diligent inquiry. It is strenuously urged, in opposition to this view, that the clause in question does not refer to mortgages at all, nor to preferences, whether direct or indirect, but only to sales out of the ordinary course of business of a trader.

Clauses one and two of section thirty-five are copied from the general statutes of Massachusetts (chapter 118, §§ 89, 91), with this important difference, that in both those sections the limitation was six months, whereas in clause one of the bankrupt act, relating more particularly to preferences, it is four months. Under the state statute the second clause was held to apply to preferences equally with the first. Metcalf v. Munson, 10 Allen, 491; Nary v. Meerill, 8 Allen, 451. And it is plain that the language of the second clause, taken by itself, does fairly include preferences, excepting such as are made by payments of money. But under the bankrupt act, the tendency of opinion has been, that the difference in limitation shows an intention to put preferences on a different ground from other technical frauds. For instance, in a late case it was held in an action by an assignee to recover back money paid by the bankrupt to a pre-existing creditor, that the declaration was bad for alleging the payment to have been made within six months instead of four months before the bankruptcy. Bean v. Brookmire [Case No. 1,168]. I hold it still open to argument whether the thirty-ninth section does not substitute six months as the limitation in all cases, repealing to that extent the thirty-fifth section. In the case just cited, it appears to have been argued that the thirty-ninth section abolished all limitation; this argument was very properly overruled. But it may be said with a good deal of plausibility, that when congress in the thirty-ninth section made a preference an act of bankruptcy and proceeded to say, that if it was made the foundation of a petition within six months, the debtor might be adjudged a bankrupt, and if he were, the assignee might recover the money or other property, they were establishing a general rule, by means of a special example, and that that rule is, that preferences within six months may be avoided by the assignee. If so, this section, to that extent, repeals the earlier section. This is a view that has lately occurred to me, and in which I reserve my final opinion. If this construction should be ultimately adopted it will certainly reconcile some apparent discrepancies, and remove some apparent difficulties.

The precise point of this case is, whether a person advancing his own money to a trader, and taking security from him, out of the ordinary course of the trader's business, is to be held liable to reconvey the security, if the only fraud intended by the debtor is the payment of a creditor by way of preference. In Massachusetts it was held in the affirmative. Crafts v. Belden, 99 Mass. 535. But, as we have already seen, the statute of that state made no distinction between preferences and other technical frauds. Here the argument is, that if the creditor himself, who has received the preference, cannot be pursued after four months, it is very hard that one who is merely aiding him to obtain his money should be liable for two months longer. I feel the force of this objection, but the language of the act plainly includes this case, and it does not seem to come within the first clause, which contemplates that the money or property coming from the debtor should be applied by the person receiving it to the payment or security of the creditor. A transaction of the kind now in question is one step farther from the preference and fully within the second clause. In fact this mortgage was given within the four months, so that if it came within the first clause, the assignee would be entitled to recover, but it seems to me that it does not, and the assignee would be without remedy if it were not for the second clause. And I cannot believe the statute is so defective.

Taking this to be so, it is clear that the mortgage was out of the ordinary course of business of Mr. Butler, because he was a retail trader, doing a business of about one hundred dollars a day, and a mortgage of such a trader's whole stock is a confession of insolvency. Nary v. Meerill, 8 Allen. 451. If made directly to the creditor, it would have been an act of bankruptcy, as I have often decided. And both parties considered it injurious to his credit, and for that reason agreed that it should not be recorded until some necessity should arise therefor.

The petition of the mortgagee must for these reasons be dismissed. I here desire to express my preference that such cases should be brought in the form of actions at law, that a jury may decide the facts. Here the evidence tends very strongly to show that a creditor was preferred. If the creditor himself were innocent, but the debtor and mortgagee contrived the preference, the latter would be liable, though the creditor would not be. Crafts v. Belden, 99 Mass. 535. But in this case it is possible that the mortgagee was hoodwinked by the others, though the prima facie evidence is against him, and is not met, and I do not believe the truth to be so. Supposing, however, that he was not aware of the exact nature of the transaction,

the assignee could certainly recover of the creditor, who is the party benefited, and justice would seem to require that he should be the person to repay the money. If, then, the mortgagee should apply to me to direct the assignee to bring an action against the creditor, on some proper terms, I should probably make such an order.

Petition dismissed. Money to remain in court for ten days unless the mortgagee waives his right to apply to the circuit court for a revision of this decree. •