### WAYMES N. POTTER & others *vs.* ELIHU BELDEN.

In an action by an indorsee against the maker on a promissory note made in consideration of a sale of goods to the defendant by an insolvent debtor in fraud of the insolvent law, a judgment for the value of the goods, recovered by the assignee in insolvency in a suit against the defendant, is admissible to show that the assignee disaffirmed the sale, although inadmissible to prove the grounds on which he impeached it; and if the suit was settled without an entry of judgment, by the payment by the defendant of the amount of the verdict rendered against him therein, the record of the suit, and evidence of his payment, are admissible, in like manner, to show such a disaffirmance.

The fact that the consideration of a promissory note was a sale of goods by an insolvent debtor to the maker in fraud of the insolvent law is not a defence to the maker in a suit

Potter *v.* Belden.

brought against him on the note by an indorsee who took it before maturity **without** notice of the fraudulent character of the sale.

If a creditor of an insolvent debtor, for the purpose of securing an unlawful preference of his debt, procures a sale of goods by the debtor to a third person, and the indorsement to himself of a promissory note made by the buyer in payment for the goods, and the debtor's assignee in insolvency elects to avoid the transfer of the note and forbids the maker to pay it to the indorsee, that is a good defence to the maker in a suit brought by the indorsee against him on the note, although he was a party to the fraud and the assignee has recovered from him the value of the goods instead of pursuing his remedy against the holder of the note.

CONTRACT on a promissory note made by the defendant under date of November 26, 1866, for $300, payable four months after date to the order of Alvin N. Claghorn, indorsed by Claghorn to Caleb L. Thayer and by Thayer to the plaintiffs. The answer admitted the making of the note; alleged that, if ever indorsed to the plaintiffs, it was so after it became due and had been dishonored, and they took it subject to all defences which could have been made to it in Thayer's hands; that it was made without a lawful consideration; that the consideration for it had failed, which the plaintiffs knew when they took it and Thayer knew when he passed it to them; that this consideration was a sale of Claghorn's property to the defendant, made in fraud of the insolvent law, with a view to give an unlawful preference to Thayer from the proceeds, Claghorn being at the time insolvent and Thayer being one of his creditors; that the assignee in insolvency of Claghorn had disaffirmed the sale and recovered from the defendant the full value of the property so sold and for which the note was given; and finally, that the assignee had forbidden the defendant to pay the note, by reason of said preference.

At the trial in the superior court, before *Scudder*, J., the plaintiffs introduced evidence tending to show, by the testimony of Thayer and another witness, that Thayer indorsed the note to them on June 27, 1868, for a valuable consideration. Thayer further testified that the defendant gave him the note in suit and another note, in payment of a debt which Claghorn was owing to him; "that said notes were procured from the defendant by an arrangement and understanding between him, Claghorn and the defendant, that if the latter would buy a portion of Claghorn's tobacco crop the notes given in consideration therefor should be given to the witness in payment of Claghorn's preëx-

isting indebtedness, as before stated, and the consideration of said notes was the sale of tobacco in pursuance of such arrangement ; that before the giving of the notes he called on Claghorn for payment, and Claghorn said he would pay if the defendant would buy his tobacco, and the witness informed the defendant of that immediately afterwards, and of the amount of indebtedness at the same time ; that Claghorn afterwards on March 18 commenced proceedings in insolvency ; and that the assignee in April or May demanded of the witness said note as a part of Claghorn's estate in insolvency."

" On the part of the defendant, the record of the proceedings in insolvency was introduced in evidence, showing that Claghorn filed his petition March 16, 1867, on which an adjudication was made and a warrant issued the same day ; that the first publication was on March 18, the warrant was returnable April 8, and James M. Crafts was chosen assignee at the first meeting of creditors on said April 8 ; that the whole amount of debts proved was $2086 ; and that the net amount of assets, including the amount of the judgment against the defendant, was $1643.67. And the defendant introduced evidence tending to show further indebtedness of Claghorn on November 26, 1866, the date of the note in suit, including the debt to Thayer, amounting to about $1300, which had not been proved in the proceedings in insolvency.

" The defendant was introduced as a witness, and testified substantially to the arrangement with Claghorn and Thayer for the purchase of Claghorn's tobacco and the application of the notes aforesaid to the payment of Claghorn's indebtedness to Thayer, as set forth in the statement of Thayer's testimony ; that he supposed Claghorn was solvent at the time he gave the notes, but he had never investigated the matter of his solvency and did not then know anything about it. He further testified that Thayer had called on him to pay the note and he told him he expected to pay it, but that was before the suit by the assignee for the value of the tobacco, and he had never said he would pay after the result of that suit ; and that shortly after the proceedings in insolvency he was notified by the assignee not to pay the note to Thayer.

" There was other evidence from other witnesses, tending to show that at the time of the arrangement for the sale of the tobacco, and before November 26, 1866, Thayer had reasonable cause to believe that Claghorn was insolvent, and that Claghorn intended by the sale to prefer Thayer as a creditor in contravention of the insolvent law.

" The judgment also recovered by the assignee against this defendant for the value of the tobacco which was the consideration of the notes, amounting with costs to some $1800, was put in evidence, which was paid by this defendant.

" At the request of the plaintiffs, after the defendant had put in his evidence, the judge, against the objection of the defendant, ruled that, assuming all to be proved which the defendant's evidence tended to prove, the defence to the action could not be maintained, and directed a verdict for the plaintiffs," which was returned. The defendant alleged exceptions, of which the foregoing is the substance, and which provided that the judgment recovered by the assignee against this defendant, with the record thereof, might be referred to.

*D. Aiken,* ( *W. S. B. Hopkins* with him,) for the defendant.

*C. Delano,* (*A. De Wolf* with him,) for the plaintiffs.

WELLS, J. The purpose to secure a preference to a preëxisting creditor, or in any respect to contravene the provisions of law relating to insolvency, does not render a sale of personal property illegal, as between the parties thereto. Neither of them is entitled to avoid the transfer ; or to avoid any executory contract which arises from it, or depends upon it for its consideration. The statutes relating to insolvency give to the assignee, and to him alone, the right to disaffirm the transaction, and avoid all contracts, made to the prejudice of the estate represented by him, which are based upon it. The doctrine of *in pari delicto,* upon which the defendant mainly relies, has therefore no application to the case ; even if the facts reported are otherwise such as to present it in that aspect. *Harvey* v. *Varney,* 98 Mass. 118.

If the judgment in the case of *Crafts* v. *Belden,* being admitted without objection, or restriction as to its effect, is to be regarded as competent between these parties for all purposes ; and

thus to establish the entire invalidity of the sale of property to Belden, on the ground either of a preference to himself, or knowledge by him of some purpose of Claghorn to contravene the laws relating to insolvency; still, this would not furnish a ground upon which to defeat the note in Thayer's hands, unless he can be charged with notice of that which rendered the sale invalid as between Belden and the assignee. The assignee, it is true, could not collect the note after an avoidance of the sale of property for which it was given. But an indorsee before maturity, without notice, cannot be affected by such failure of consideration. It does not appear, from the exceptions, that Thayer had notice of any ground on which the transaction could be impeached as against Belden.

We are of opinion, however, that, between these parties, the judgment, although admissible for the purpose of showing that the assignee had disaffirmed the sale to Belden and reclaimed and recovered the value of the property, for which in part the note was given, yet was not competent to prove the grounds upon which the sale was impeached. 1 Greenl. Ev. §§ 524, 536–539. *Copp* v. *McDugall,* 9 Mass. 1.

But the evidence tended to show that Thayer procured the sale of the property to be made, and the notes transferred to himself, for the purpose of securing a preference, and with reasonable cause to believe that Claghorn was insolvent at the time and intended to give such preference. As against Thayer, therefore, the assignee was entitled to treat the whole transaction as void. The statutes authorize the assignee to deal with transactions of this nature in the mode that will work most advantage to the estate consistently with the rights of other parties. He might elect to affirm the sale of the property and disaffirm the transfer of the note given for it. In that case, if doubtful of the responsibility of the holder of the note, he might, by joining the maker in a suit in equity, require payment directly to himself of the amount due upon it. *Holmes* v. *Woodworth,* 6 Gray, 324. He "may recover the property, or the value of it, from the person so receiving it, or so to be benefited;" provided such person had reasonable cause to believe that the transfer was made in

fraud of the laws relating to insolvency. Gen. Sts. *c.* 118, § 80. What he may do by suit, he may accomplish, if he can, without suit.

In this case, the assignee elected to avoid the transfer of the note to Thayer, who then held the note, and whose rights alone these plaintiffs are entitled to enforce. He also notified Belden not to pay the note to Thayer. If he had required Belden to pay the amount of the note to himself, there can be no doubt that such payment would have been a complete bar to any recovery by the holder of the note. But to have done that would have affirmed the sale to Belden. He had no occasion to require such payment, because he succeeded in enforcing the larger claim for the value of the whole property sold to Belden, for which, in part, the note was given. But this recovery did not operate to affirm the transfer of the note by the insolvent to Thayer. It is not necessary to decide whether the recovery of the property sold would, of itself, have defeated the note in the hands of Thayer. That might depend upon the question whether Thayer had notice of the invalidity of the sale to Belden. As the assignee did elect to disaffirm and avoid the transfer of the note to Thayer, — whether as a supposed means of recovering for the property from Belden, or for the purpose of holding and appropriating the proceeds of the note if he should fail in the larger claim, is immaterial, — the title of Thayer to collect the note for his own use is defeated, and Belden may properly take advantage thereof. Upon this ground we think the defence of Belden may well be maintained.

We see no elements of estoppel in the case, upon either ground relied on by the plaintiffs. And in this view of the rights of the parties, it is immaterial whether Belden knew or did not know of the fraudulent purpose between Claghorn and Thayer. It is also immaterial upon what ground the assignee succeeded in recovering against Belden. That which defeats Thayer's title, and the right of the plaintiffs to recover upon his title, is the fraud between him and Claghorn, and the act of the assignee in assertion of his right to avoid the transfer of the note to Thayer.

*Exceptions sustained.*

At the new trial in the superior court, before *Dewey*, J., the defendant, to show that Claghorn's assignee in insolvency disaffirmed the sale of the tobacco, offered in evidence the record of the suit of the assignee against him, showing the return of a verdict therein for the assignee; the plaintiffs objected to its admission, on the ground that it proved no recovery by the assignee and merely showed that the suit was terminated by entries of a nonsuit and a default after the entry of a rescript from this court overruling exceptions alleged by the defendant as reported 99 Mass. 535; but the judge admitted it for the purpose for which it was offered, and also, against the plaintiffs' objection, admitted evidence that the defendant paid to the assignee the full amount of the verdict. The jury found for the defendant; and the plaintiffs alleged exceptions, which were argued at September term 1871.

*C. Delano & J. C. Hammond*, for the plaintiffs.

*D. Aiken*, for the defendant.

MORTON, J. One of the issues in the trial was, whether the assignee of Claghorn had disaffirmed the sale to Belden and reclaimed the value of the property, for a part of which the note in suit was given. We have no doubt that, upon this issue, the record in the suit of *Crafts* v. *Belden* was properly admitted. The institution of the suit, and the various steps in the course of its prosecution, were acts of the assignee showing an intention on his part to disaffirm the sale, as being in contravention of the insolvent laws. As such, they were admitted. Upon the same ground, the fact that Belden paid the amount of the verdict in full was competent. The receipt of the amount was the final act of the assignee consummating the disaffirmance, and perfecting the reclamation of the value of the property. It is immaterial that no judgment was rendered in the suit of *Crafts* v. *Belden*. If such judgment had been rendered, it would be admissible only as one of the acts of the assignee to show the disaffirmance. If he was able to reclaim the value of the property without a formal judgment, the effect, as to these plaintiffs, is the same as if he had recovered it on a judgment. *Exceptions overruled.*