INHABITANTS OF DANA *vs.* INHABITANTS OF PETERSHAM.

In an action between two towns to recover for expenses incurred by the plaintiffs in supporting a pauper alleged to have his settlement with the defendants, it was admitted that he had no other than a derivative settlement, and was found as a fact that he derived a settlement with the defendants from his ancestors unless his grandfather acquired one with the plaintiffs. *Held,* that the burden of proving that the grandfather acquired such a settlement was on the defendants.

Evidence that a man who resided in a town eighteen years, in occupation of real estate, was taxed there on his poll in five years of the eighteen, and also on real estate in four years of the five, and that in two of the five years his name was on the voting list of the town, is not conclusive that the taxes were paid by him.

A bond for the conveyance of land of the obligor to the obligee upon payment of a fixed sum of money within a certain time, and a lease of the land to the obligee for that time, vest no title in the freehold in the obligee.

The obligor, in a bond to convey land belonging to him to the obligee upon payment of a fixed sum of money in a certain time, holds the land subject to no trust for the obligee after the expiration of the time without the payment.

CONTRACT for expenses incurred for the support of the minor children of Calvin Carter as paupers, whose settlement was alleged to be in Petersham.

At the trial in the superior court, before *Dewey,* J., without a jury, it was admitted that the children had no other than a derivative settlement; and the plaintiffs contended and offered evidence tending to show that Calvin Carter acquired a settlement in Petersham (1) under the St. of 1865, c. 230, § 1, by serving as a soldier in the civil war upon the quota of that town, and (2) through his grandfather, John Carter. All the questions which arose concerning his service as a soldier are now immaterial. With regard to his acquiring a settlement through his grandfather, the judge found that the grandfather had his settlement in Petersham ; and that Calvin Carter thereby derived a settlement there, unless his father, Silas J. Carter, acquired a settlement in a portion of the town of Dana which formerly belonged to the town of Hardwick and was set off to Dana on February 4, 1842.

The defendants contended that Silas J. Carter did acquire a settlement in this part of Hardwick (1) by having and living on a freehold estate there during three successive years, and (2) by

residing there for ten years and paying taxes for five years of the ten.

Upon the first of these issues, there was evidence of the following facts : " On January 26, 1824, Mark Haskell gave Silas J. Carter a bond for the conveyance of about seventeen acres of land in Hardwick, 'said deed to be given on or before April 1, 1827, upon the payment of $165.43, said sum being the amount of three notes of equal amount, bearing even date with the bond, given by said Carter to said Haskell ; ' and on the same day, for the stated consideration of $19.85 paid by said Carter, gave him a lease of said premises during the term of three years from April 1, 1824."

" In April 1824 said Carter moved a small house upon the premises, called the Hoyt house, and occupied said premises with his family till March 17, 1831, when a conveyance was made by Haskell, for the alleged consideration of $70, to Benjamin F. Carter, a brother of Silas J., of four acres of the land, including that portion on which this house stood. There was no evidence as to who made the contract to sell, or to whom the money was paid, unless a receipt of that date, on the bond of Haskell to Carter, of $69.84, signed by Haskell, is evidence. Silas J. Carter then moved into a house which he built upon another portion of the seventeen acres, where he resided till February 1839, (said house being known as the Carter house,) when he moved to what was called the Ellsworth place. On March 2, 1836, Haskell conveyed eleven acres of land, adjoining the seventeen acre lot, to Francis S. Rogers ; and on August 24, 1836, he conveyed to said Rogers two and a half acres of the seventeen acre lot. Rogers testified that he made the trades with Carter, and paid to him for the first lot the sum of $90, and for the second lot $80. On January 2, 1837, Haskell conveyed to said Carter the residue of the land, nine acres, described in his bond, the consideration mentioned in the deed being $100 ; and he continued the owner and occupant of the same till February 26, 1839, when he conveyed it to John Page, having always exercised acts of occupation and ownership of said land from April 1824 till said conveyance. On February 5, 1839, David Page gave to said Carter a bond for the convey-

ance to him of the Ellsworth farm in Hardwick, containing one
hundred acres of land, to be conveyed at any time within seven
years upon the payment of $1000 with interest; and said Carter
immediately thereafter moved to said Ellsworth farm, and re-
mained in the occupation of the same till his decease in January
1842."

There was no other evidence of any payment by Silas J. Carter
to Haskell for the land described in the bond which he took from
Haskell; and no evidence that he ever paid anything to David
Page.    The defendants contended that the proof of the foregoing
facts would warrant a finding that Silas J. Carter had and lived
on a freehold estate in Hardwick for three successive years; and
the judge so found thereon, subject to the revision of this court.

Upon the second issue, namely, as to the payment of taxes in
Hardwick by Silas J. Carter, the judge found, upon evidence
introduced by the defendants, that taxes were assessed on Silas
J. Carter's poll, or on his poll and estate, both real and personal,
in Hardwick, each year during the five years 1837–1841.    There
was no direct evidence that he paid the taxes; but the defend-
ants contended that "his long residence and occupation of real
estate, and the facts that he was taxed on real estate for four of
the five years," including the first and last years of the five, "and
that his name was on the voting list in 1839 and 1840," required
a finding that they were paid by him.    There was no evidence
whether or not he was taxed there, or his name put on the voting
list there, in any other years; and the town clerk of Hardwick
testified that the books of record from which such facts were to
be ascertained could not be found.    The plaintiffs introduced evi-
dence that he had a very large family and very small pecuniary
means while he lived in Hardwick; and that when he died in
January 1842 his real estate was appraised at only $7, and
his personal property, including all his household furniture, at
$101.86.

The judge ruled that the evidence relied upon by the defend-
ants as conclusive of payment of the taxes by Silas J. Carter was
not so; and upon the whole evidence found that it was not proved
that he paid them.

By consent of the parties the case was reported for the revision by this court of the questions of law above stated, judgment to be entered for the plaintiffs or defendants according to its determination.

*P. E. Aldrich & C. Brimblecom*, for the plaintiffs.

*W. A. Field & S. Utley*, for the defendants.

AMES, J.   The question whether the pauper acquired a settlement in the defendant town by virtue of his enlistment, as a part of its quota, in the military service of the United States, we do not find it necessary to consider.   It is found as a fact, in the report, that his grandfather had a legal settlement in that town, of which he would have the benefit, unless his father, Silas J., acquired one afterwards in Hardwick, as claimed by the defendants. It appeared that Silas J. lived for several years in that part of Hardwick which has since been set off to the plaintiff town; and the defendants insist that in such residence he in two different ways fulfilled the conditions made necessary by the statute to the acquisition of such a settlement, namely : 1st. Having and living on a freehold estate in Hardwick three years successively; 2d. Residence in that town for ten years and payment of taxes five years of the ten.

As to the acquisition of such settlement in the second of these two modes, the report finds that it was not proved that he paid the taxes which were assessed upon him during the five years to which the evidence offered by the defendants applied.   Upon this question, the burden of proof was clearly upon the defendants, and as it is not met, this specific defence falls to the ground. *Berlin* v. *Bolton*, 10 Met. 115, 120.

It only remains then to consider whether he acquired a settlement in Hardwick in the other mode relied upon by the defendants.   ·According to the facts presented by the report, it is manifest that he had no freehold title, in the common law sense of the term, in the dwelling in which he resided, until January 2, 1837, that being the date of the deed from Mark Haskell to him. He removed from that place to another in the same town, on February 26, 1839, at which time he sold the house and land to John Page, thereby terminating the requisite united residence

and ownership more than ten months before the expiration of the three years. He had no title in the new place, except a bond giving him the right of purchase on payment of one thousand dollars and interest in seven years. It was held in *West Cambridge* v. *Lexington*, 2 Pick. 536, that such a title is not a freehold within the meaning of the statute.

The defendants contend that he had at least an equitable estate in the land; that the legal title was held in trust for his benefit, and that so the case comes within the decision of *Randolph* v. *Norton*, 16 Gray, 395. In that case, a person had placed a building upon a lot of land which he had previously agreed to buy, and which he afterwards did buy and pay for, and had directed that the deed should be to a third person to whom he owed the price of the house, he taking a bond from that person for the reconveyance to himself on the payment of the debt on a day agreed upon, with interest, the occupation in the mean time being allowed to himself. It was held that this bond was really a declaration of trust. The earlier case of *Orleans* v. *Chatham*, 2 Pick. 29, is of the same general character. Both were cases of the pledge of property to secure a creditor, and the title of the debtor was analogous to that of a mortgagor. In both these cases, it was held that the debtor had an equitable freehold, capable of satisfying the terms of the statute as to this special mode of acquiring a settlement. But we find no case in which it has been held that the obligor in a bond to convey land on the payment of a sum of money can be said to hold in trust for the intending purchaser after the expiration of the stipulated time without the payment. None of the land was conveyed until nearly four years after the expiration of the time limited by the bond, when a portion of it was conveyed (probably at the request of Silas J.) to his brother Benjamin F., at which time a payment was made upon the bond. Another portion was conveyed about four years afterwards. But upon the facts contained in the report we see nothing in the nature of evidence that the bond was paid in full, or in such a sense that Haskell could possibly be said to hold the title in trust for Silas J. at any time before the final conveyance to him in January 1837. See *Harvey* v. *Varney*, 98 Mass. 118

122.   The acts of ownership exercised by him are not described, and may have been such as would be naturally accounted for by the fact that he held a lease, and occupied under an expectation of purchase.   Without proof that the bond had been paid, they would not be sufficient to make out an equitable title to the freehold, by virtue of which Silas J. could have acquired a settlement.                      *Judgment for the plaintiffs.*