[No. 4806.   Decided March 1, 1904.]

PETER CHANTLER, *Appellant,* v. EDWARD HUBBELL, *Respondent.*[1]

TRUSTS—FRAUD—BLIND MORTGAGE IN FRAUD OF CREDITORS—AC-
COUNTING BY FRAUDULENT MORTGAGEE AS TRUSTEE—AID REFUSED TO
EITHER PARTY.  Where a "blind" mortgage was given to protect
the property from execution upon an anticipated judgment
against the owner, and the property is nevertheless sold on exe-
cution and the judgment creditor becomes the purchaser, and
afterwards sells the land for a small sum to the holder of such
mortgage, the owner is not entitled in equity to an accounting
from such mortgagee as a trustee, since the transaction was a
fraud which the courts should discourage by refusing aid to
either party.

APPEAL—FINDINGS ON CONFLICTING EVIDENCE—REVIEW.  Find-
ings in an equity case should not be disturbed where but two
witnesses testify and their evidence is conflicting and the lower
court had an opportunity to observe their appearance and con-
duct on the witness stand.

Appeal from a judgment of the superior court for Clarke
county, A. L. Miller, J., entered March 13, 1903, after a
trial before the court without a jury, dismissing on the
merits an action to declare a trust and for an accounting.
Affirmed.

*George W. Joseph* (*N. H. Bloomfield,* of counsel), for
appellant.

*E. M. Green,* for respondent.

FULLERTON, C. J.—In 1890 the appellant Chantler,
being then the owner of certain real property situate in the
city of Vancouver, Clarke county, mortgaged the same to
a loan company to secure a loan of $800, and shortly there-
after conveyed the fee of the property, subject to the mort-
gage, to one Bud Van Atta.  Later on, and prior to July

[1]Reported in 75 Pac. 802.

5th, 1894, he became the owner of two other tracts of land situate in the same county; and on that date he gave a mortgage on the same to the respondent Hubbell, purporting to secure a loan of $800 made to him by respondent, payable, according to the terms of the mortgage, on or before five years after date.

Subsequent to the execution of this latter mortgage, the loan company brought foreclosure on the first one, prosecuted the same to judgment and sale, and obtained a deficiency judgment against Chantler for some $391. Execution was issued on this judgment, and the property mortgaged to respondent was levied upon and sold in satisfaction thereof, the loan company becoming the purchaser of the property for the full amount of the deficiency judgment. Later on the respondent purchased the land from the loan company, paying therefor $50 and the back taxes on the land, amounting in the aggregate to about $100, taking a quitclaim deed to the property.

In this action the appellant sought to have the respondent declared a trustee holding the property in trust for him, subject to be conveyed on his paying to the respondent the amount the respondent had advanced in procuring the legal title to the property and in the payment of taxes thereon. He asked further that these amounts be determined, and that the respondent be required to reconvey the property to him, on his paying the amounts so determined to the respondent, or into the court for his use. The trial court, after hearing the evidence of both sides, entered a judgment dismissing the action for want of equity, taxing the costs against the appellant. This appeal is from that judgment.

In his complaint the appellant alleges, in substance, that prior to the execution of the mortgage to the respondent he learned that the loan company contemplated foreclosing the mortgage he had theretofore given on the land conveyed to

Van Atta, and that he anticipated a deficiency judgment against himself as a result of such foreclosure; that, to procure a means of satisfying such deficiency judgment, and protecting his real property from the sacrifice of a forced sale, he entered into a contract with the respondent, by the terms of which the respondent agreed that, in consideration of the execution of the above mentioned mortgage, he would satisfy such deficiency judgment and protect the appellant's property from sale thereunder, and treat such sums of money necessarily advanced for that purpose as secured by such mortgage, and that the mortgage was thereafter executed in pursuance of such understanding and agreement.

His testimony given on the witness stand was not quite so specific. He stated, when being interrogated directly by his counsel, that the mortgage was given for purposes substantially as alleged in his complaint, but when he undertook to detail the transaction, and in his cross-examination, he testified, that prior to the execution of the mortgage nothing was said about the advancement of money thereunder; that the mortgage was first intended as a "blind mortgage," to protect his property from sale under the deficiency judgment, should one be obtained against him; and that the agreement on the part of the respondent to satisfy and pay off the deficiency judgment was made after the execution of the mortgage.

On the other side the respondent testified, that there was no agreement made, either before or after the execution of the mortgage, to the effect that he was to make advancements for the purposes stated, or advancements for any purposes on behalf of the appellant; that the appellant sought him out, and asked to be allowed to execute the mortgage to him, stating that the property was liable to be sold on a judgment which was certain to be obtained against him, and that he thought such a mortgage would "scare

away" the judgment creditor. He further testified that he consented to hold the mortgage, after being advised that it would not "get him into trouble," and with the understanding that, if any question arose concerning it, he would tell the truth about it. He also testified that he purchased the property after informing the mortgage company that the mortgage he held was sham and without consideration, and after the company had given the appellant the opportunity to purchase the property at the same price. This latter statement, however, the appellant denied. No other witness testified concerning the transaction.

Whether or not the respondent took the title to the property charged with a trust in favor of the appellant depends, it seems to us, upon the effect that is given to this testimony. If it be the fact that the mortgage to the respondent was given on the express understanding that he would, in consideration thereof, protect the title of the appellant against any deficiency judgment obtained on the mortgage to the loan company, then he is obligated to reconvey the title he did acquire to the appellant on the repayment to him, with interest, of the sums he has advanced for that purpose; and it may be that the same result would follow were it true that the mortgage was first conceived in fraud, and the parties afterwards repented and agreed to make an honest transaction out of it. But if it be a fact that the mortgage was fraudulent in its inception, and remained such throughout, then no rights can grow out of it which a court of justice will enforce.

While there are certain admitted exceptions to the general rule that courts will refuse to aid either party to a fraudulent transaction, this case does not fall within them. The courts refuse to aid in fraudulent transactions, because of public policy, and the rule operates, of course, only in cases where the refusal of the courts to aid either party

frustrates the object of the transaction, and takes away the temptation to enter into them—that is to say, when it tends to promote good morals not to aid either party, aid is refused by the courts; but whenever public policy is considered advanced by giving relief to either party, then such relief will be given.

Cases, however, where public policy will be best subserved by aiding or enforcing a fraudulent transaction are very rare, and instances where the rule has been put in force are not many; but a frequently cited instance is found in the case of *Montefiori v. Montefiori,* 1 W. Bl. 363, where one brother gave to another a note in order to enable the latter to make a wealthy marriage. This note was enforced because such contracts would best be discouraged by enforcing them. But it is evident that the case at bar does not fall within any such rule. If the mortgage is to be held free of fraud, then there is no question of public policy involved. If, on the other hand, it was intended to defraud the appellant's creditors, the appellant cannot, by any proceeding in the courts, compel the respondent to share with him, or turn over to him, the profit the respondent may have made by reason of the fraud. Such a rule would encourage, not discourage, fraudulent transactions.

On the question of fact, we are not disposed to overrule the findings and conclusions of the trial court. As we have said, there were but two witnesses to the main transaction, the appellant and the respondent, and their evidence was squarely in conflict. As the trial court had the opportunity to observe the appearance, conduct, and demeanor of the witnesses while testifying, its conclusion is much more apt to be the right one than is the conclusion of this court, which must make up its findings from the transcript. The findings of the trial court require an affirmance of the

judgment, and the order of this court will be that the judgment stand affirmed.

HADLEY, ANDERS, MOUNT, and DUNBAR, JJ., concur.