[No. 11907.   Department One.   October 9, 1914.]

JAMES W. BOOTHE, *Respondent*, v. H. F. BASSETT *et al.*, *Appellants*.[1]

APPEAL—RECORD—STATEMENT OF FACTS—CERTIFICATION. A motion to strike a statement of facts because it did not contain all the evidence will be denied, where it was certified to contain all the material facts and all the evidence both oral and in writing, and no amendment was proposed by the respondent.

FRAUDULENT CONVEYANCES—CONTRACTS ARISING OUT OF—RELIEF. Where plaintiff and defendant acquired property on a joint venture, under an agreement to share the profits equally, and the title was taken in the name of defendant for the primary reason of placing the entire title beyond the reach of the judgment creditor of the plaintiff, a court of equity will not compel a conveyance of a half interest, as the contract was against public policy.

SAME—RELIEF—PARTIES NOT IN PARI DELICTO. In such a case, the rule that equity grants relief from fraudulent transactions if the parties are not *in pari delicto* does not apply where the actor in the present suit is the one who was guilty of the fraud, the defendant having no intention to defraud plaintiff's creditors.

PLEADING—AFFIRMATIVE DEFENSES—WAIVER—ISSUES, PROOF AND VARIANCE. In an action for specific performance, the defense that the transaction was fraudulent and against public policy, is available to defendant without being specially pleaded as an affirmative defense, where an issue was made by denial of the contract, and the fraudulent nature of the transaction was brought out upon plaintiff's direct examination and further developed on cross-examination without objection.

[1] Reported in 143 Pac. 449.

APPEAL—REVIEW—RELIEF TO RESPONDENT—CROSS-APPEAL—NECESSITY. In an action for specific performance, and for money had and received where there is no cross-appeal by plaintiff, error in denying plaintiff a money judgment cannot be reviewed on defendant's appeal from the judgment granting specific performance.

Appeal from a judgment of the superior court for Adams county, Holcomb, J., entered August 6, 1913, upon findings in favor of the plaintiff, in an action for specific performance and for money had and received. Reversed.

*Zent, Powell & Redfield,* for appellants.

*W. C. Donovan* (*George H. Armitage,* of counsel), for respondent.

MAIN, J.—The purpose of this action was to compel the specific performance of an oral contract for the conveyance of an interest in real estate, and in addition thereto, a money judgment. The cause was tried to the court sitting without a jury. Judgment was rendered directing specific performance. The defendants appeal.

The facts are as follows: On the 1st day of October, 1912, and for sometime prior thereto, James W. Boothe and H. F. Bassett were engaged in the real estate business, at Spokane, Washington. Each was operating independently of the other. On the date mentioned, Bassett had a client who owned an equity in a house and lot in the city of Spokane which could be purchased for $750. Boothe had a client who owned certain farm land located in Adams county which he was willing to exchange for city property. Boothe and Bassett entered into an oral agreement whereby Boothe was to furnish $750 for the purpose of acquiring the equity in the city property, and after this was purchased, an exchange was to be made for the Adams county land. Boothe borrowed the money, the equity was purchased, and the exchange of the properties made; the owners of the respective properties exchanging titles. After these conveyances had been made, the title to the farm land was, by the previous owner of the

city property,. in turn conveyed to Bassett.   Thereupon, Boothe and Bassett arranged for a loan in the sum of $1,300, and gave a mortgage upon the farm land signed by Bassett and his wife.   The money realized from this loan was used to repay Boothe the $750 which he had previously borrowed to pay for the equity in the city property, and the expenses incident to that loan.   The balance of the money was to be used for the purpose of putting the land under cultivation.   The date of the loan·upon the farm land was October, 14, 1912. Sometime after the transactions took place as above indicated, Boothe demanded that Bassett convey to him an undivided one-half interest in the farm land, and also pay over one-half of the money realized from the mortgage which had not been expended.   Under the agreement entered into, the parties were to share equally in the profits of the transaction.

The present action was instituted on or about the 5th day of March, 1913.   After the issues were formed, the cause in due time came on for trial.   The plaintiff was the only witness who testified upon the trial.   The plaintiff, on direct examination, testified that "this property came to be in Mr. Bassett's name because I had signed as surety on a bond on an appeal to the supreme court.   The judgment was affirmed and that made it so I was bound to pay the judgment.   They were bothering me about that and I was afraid if the title stood in my name that it would make trouble."   On cross-examination, he further testified "the reason I had this title put in Mr. Bassett's name was because I knew if it showed in my name this creditor might learn of it and try to take it on that judgment; because of that and because it was more convenient.   It would not be necessary for so many of us to sign papers.   All of us were living at Spokane.   It was less trouble to have it in his name alone.   I did not have any property in my name at that time."   The bond, upon which the judgment referred to was rendered, was a supersedeas bond, the amount of which is not stated.   At the conclusion

of the plaintiff's evidence, the defendants moved that the action be dismissed. This motion was denied. Thereupon, the defendants elected to stand upon the record as then made, and offered no testimony. Judgment was entered as above indicated. The defendants have appealed.

The respondent opens his brief in this court with a motion to strike the statement of facts and affirm the judgment. This motion appears to be based upon the contention that the statement of facts does not contain all the evidence. In the certificate of the trial judge to the statement of facts, it is said:

"That the above and foregoing statement of facts contains all the material facts, matters and proceedings heretofore occurring in said cause and not already a part of the record therein; contains all the evidence, oral and in writing therein, and that the above and foregoing statement of facts was duly and regularly filed with the clerk of the said court and thereafter duly and regularly served within the time authorized by law, and that no amendments were proposed to said statement of facts."

It thus appears that the trial judge certified that the statement of facts contained not only all the material facts, but all the evidence both oral and in writing. It also appears that the respondent proposed no amendment to the statement of facts. We think the motion to strike not well founded.

Upon the merits, it will be necessary to notice but one assignment of error. From the facts stated, it appears that the primary reason for placing the entire title in the name of Bassett was to put the property beyond the reach of Boothe's judgment creditor. Where a conveyance of property is made to hinder, delay or defraud creditors, as between parties it is good, and a court of equity will not interfere at the instance of a fraudulent grantor to aid him in a recovery of the property. Such a conveyance is illegal as to creditors only. This rule is founded upon public

policy. 14 Am. & Eng. Ency. Law (2d ed.), p. 274; 20 Cyc. 615; 2 Moore, Fraudulent Conveyances, p. 630; *Kitts v. Willson*, 130 Ind. 492, 29 N. E. 401.; *Chantler v. Hubbell*, 34 Wash. 211, 75 Pac. 802.

In the case last cited, it was said:

"While there are certain admitted exceptions to the general rule that courts will refuse to aid either party to a fraudulent transaction, this case does not fall within them. The courts refuse to aid in fraudulent transactions, because of public policy, and the rule operates, of course, only in cases where the refusal of the courts to aid either party frustrates the object of the transaction, and takes away the temptation to enter into them—that is to say, when it tends to promote good morals not to aid either party, aid is refused by the courts; but whenever public policy is considered advanced by giving relief to either party, then such relief will be given.

"Cases, however, where public policy will be best subserved by aiding or enforcing a fraudulent transaction are very rare, and instances where the rule has been put in force are not many; but a frequently cited instance is found in the case of *Montefiori v. Montefiori*, 1 W. Bl. 363, where one brother gave to another a note in order to enable the latter to make a wealthy marriage. This note was enforced because such contracts would best be discouraged by enforcing them. But it is evident that the case at bar does not fall within any such rule. If the mortgage is to be held free from fraud, then there is no question of public policy involved. If, on the other hand, it was intended to defraud the appellant's creditors, the appellant cannot, by any proceeding in the courts, compel the respondent to share with him, or turn over to him, the profit the respondent may have made by reason of the fraud. Such a rule would encourage, not discourage, fraudulent transactions."

The rule applies not only when there has been a conveyance from the previous holder of title for the purpose of defrauding his creditors, but also where title to property at the time it is acquired is placed in the name of a third party for the purpose of interfering with the rights of creditors. *Coleman v. Coleman*, 147 Ky. 383, 144 S. W. 1, 39 L. R. A.

(N. S.) 193; *Kirkpatrick v. Clark*, 132 Ill. 342, 24 N. E. 71, 22 Am. St. 531, 8 L. R. A. 511; *Hill v. Scott*, 12 Ky. Law 877, 15 S. W. 667.

In the *Kirkpatrick* case, it is said:

"If it is true, as the evidence offered would tend to show, that the defendant purchased the lot in question of Ashelby with her own money, but, for the purpose of hindering and defrauding her creditors, entered into a fraudulent arrangement or conspiracy with the plaintiff to have said lot conveyed to him, said transaction was illegal, and within the condemnation of the fourth section of our present statute of frauds. The transaction being consummated by the execution of the conveyance to the plaintiff, leaving the defendant in the possession which she had previously obtained under a demise from Ashelby, the law should leave them both where it finds them. The defendant, clearly, could not be permitted to go into a court of equity to compel an execution by the plaintiff of his trust; and it would seem that, upon the same principle, the plaintiff should be debarred from coming into a court of law to use his ill-gotten title for the purpose of recovering of the defendant the possession."

In the present case, however, it is claimed that the rule does not apply because it does not appear that the parties were *in pari delicto*. So far as the record shows, the purpose of Bassett in receiving title in his own name was not to aid in hindering, delaying or defrauding the creditors of Boothe. If Bassett were the actor in this action it doubtless would be true that, the parties not being *in pari delicto*, the rule would not be operative against him; but the actor in the present action is the party who sought to defraud his judgment creditor by keeping his name free from the title. In such a case, the party guilty of the attempted fraud is within the rule. In *Allstead v. Laumeister*, 16 Cal. App. 59, 116 Pac. 296, it was said:

"It may be true that, although Van Allstead stood *in pari delicto* to the fraud, the defendant would not sustain that relation thereto unless she accepted the trust with notice or knowledge of its fraudulent character or that its pur-

pose was to defraud third parties; still, nevertheless, the transaction between plaintiff and his son was so tainted with corruption that its nature as thus characterized could not be changed, however many times the property might be transferred, except where conveyed to an innocent purchaser for value and without notice or knowledge of the fraud. In other words, it is obviously immaterial, so far as the plaintiff—the *actor* in this suit—is concerned, whether the defendant stood or did not stand *in pari delicto* to the fraudulent creation of the trust which she accepted from Van Allstead and promised to execute. The question whether she stood *in pari delicto* to the fraudulent contract or as a *participes criminis* in the fraud giving rise to it could be material only where she was also seeking affirmative relief as to the property, in which case, should she be found, equally with the plaintiff, to be a party to the fraud, a court of equity would refuse to interfere in behalf of either."

The respondent cites the case of *Harvey v. Varney*, 98 Mass. 118, as sustaining his right to maintain the action, notwithstanding the fact that the title was placed in the name of Bassett for the purpose of hindering, delaying and defrauding a creditor of Boothe. Without detailing the facts in that case, it may be said that to have applied the rule there forbidding recovery would have worked a great hardship. It is doubtful whether that case can be distinguished in principle from the present case, but if it cannot be so distinguished, it is not in harmony with the doctrine of this court in *Chantler v. Hubbell, supra*. To permit the contract in this case to be enforced notwithstanding the fraud would encourage fraudulent transactions. This being true, under the rule of the *Chantler* case, the question should be resolved in a way to discourage such transactions.

The respondent, however, claims that, since the fraudulent nature of the transaction was not pleaded as an affirmative defense, it is not available to the appellant. The complaint pleaded an oral contract. This the answer denied, but did not affirmatively plead that the title was taken in Bassett's name for the purpose of hindering, delaying and defrauding

a creditor of Boothe's.  The record shows that the fraudulent nature of the transaction appeared in the answer of the respondent upon direct examination to a question propounded to him by his counsel.  It is further elaborated upon cross-examination without objection.  The matter having been brought out on direct examination and pursued upon cross-examination without objection, is available to the appellants without their having pleaded it affirmatively.  *Geroso v. De Maio*, 75 N. J. Eq. 410, 72 Atl. 432; *Harvey v. Varney, supra.*

Had the fraudulent nature of the transaction not been brought out by the respondent as a part of his case in chief, and the defendant had gone into the matter on cross-examination over objection, or had sought to show it as a part of his defense without pleading it, a different question would be presented.

There being no cross-appeal, the correctness of the court's judgment in declining to award a money judgment is not open to review.

The judgment will be reversed, and the cause remanded with instructions to the superior court to dismiss the action for specific performance.

CROW, C. J., CHADWICK, ELLIS, and GOSE, JJ., concur.