FRANCIS M. HOLMES & others *vs.* SARAH W. WINCHESTER.

Worcester.   Oct. 6, 1882. — Sept. 7, 1883.   COLBURN & HOLMES, JJ., absent.

If a wife releases dower in her husband's land, at his request, in consideration of an oral agreement by him to convey to her other land, which is no more than a fair equivalent for the value of her dower so released, he being solvent at the time of making such agreement, and if he subsequently, within six months of the commencement of proceedings in insolvency, conveys such land to her through a third person, at a time when he is insolvent and she has reasonable cause to believe him insolvent, his assignees may avoid the conveyance, under the Gen. Sts. c. 118, § 89 or § 91.

WRIT OF ENTRY, by the assignees in insolvency of George C. Winchester, to recover an undivided half of certain real estate in Fitchburg. Trial in the Superior Court, before *Knowlton,* J., who allowed a bill of exceptions, in substance as follows:

There was evidence tending to show the due appointment of the demandants as assignees of George C. Winchester upon adverse proceedings commenced against him on September 1, 1879, by his creditors, and the assignment of his estate to the demandants in January, 1880.

It appeared that the real estate demanded was conveyed to George C. Winchester in 1868; that the same was sold on

December 2, 1876, upon an execution, which duly issued on a judgment against George C. Winchester, and was purchased at the sheriff's sale by one J. F. Litch, who bid off the same at the request of Winchester, and was furnished by him with the necessary money to pay for the same; that said estate was duly conveyed by the officer on December 12, 1876, to Litch, who retained the title until April 14, 1879, when, at the request of Winchester, he executed a deed of the same to the tenant, who was, and for a long time prior thereto had been, the wife of George C. Winchester.

There was also evidence tending to show that said deed was delivered to the tenant on or about April 14, 1879; that the same was entrusted by her to her husband to have it put on record, but that it was not recorded until September 1, 1879; that on said April 14, 1879, George C. Winchester was insolvent; that the tenant had reasonable cause to believe him insolvent; and that such conveyance was made in fraud of the laws relating to insolvency.

It further appeared that, on December 1, 1876, the tenant, who was then the wife of George C. Winchester, joined with him in a mortgage upon his real estate for the sum of $77,500, in release of dower; and there was evidence tending to show that, in consideration of her thus releasing her dower, and to induce her to execute said mortgage, George C. Winchester agreed to convey to her the land demanded, and certain other real estate, none of which was covered by said mortgage.

It was agreed at the trial that the value of the real estate so to be conveyed to her was only a fair equivalent for the release of dower aforesaid.

No claim was made that at the time of this agreement George C. Winchester was not solvent. The mortgage is still outstanding and the mortgage debt unpaid.

There was also evidence tending to show that the conveyance by Litch to the tenant was to complete and carry out the above agreement of George C. Winchester, and was also for the purpose of effecting a fraud upon the insolvency laws.

It also appeared that, up to that time, nothing had been done in execution of said agreement, and that the other real estate therein referred to was never afterward conveyed.

The tenant asked the judge to rule that, if the jury found that the tenant, in 1876, at a time when her husband was solvent, released dower in certain real estate of his, in consideration of his agreement to convey the specific property in suit to her, and if the value of the property so agreed to be conveyed by her husband was only a fair equivalent for her dower interest released, and if, subsequently, the conveyance from her husband through Litch to the tenant was made to perfect and carry out said agreement, such conveyance would be valid, even though the tenant's husband was insolvent at the time of such conveyance, and the tenant had reasonable cause to believe him insolvent.

The judge declined so to rule; but left it to the jury to determine, under full instructions, whether the conveyance from Litch to the tenant was void, as against the assignees of George C. Winchester, either as fraudulent at common law, or as a fraudulent preference under the insolvent law of a person having a claim against him, or as a fraudulent conveyance of his property with a view to preventing its being distributed under the insolvency laws of this Commonwealth; and gave no instructions relating to the matter set forth in the tenant's request, except to rule that the facts therein set forth, if proved, would constitute a good consideration for such conveyance at common law.

The jury returned a verdict for the demandants; and the tenant alleged exceptions.

*F. A. Gaskill*, for the tenant.

*S. Hoar*, for the demandants.

FIELD, J. Proceedings in insolvency were begun against George C. Winchester on September 1, 1879. The deed was delivered to the tenant on or about April 14, 1879, and was recorded on September 1, 1879. The conveyance of the land was therefore made within six months of the filing of the petition. Gen. Sts. *c.* 118, §§ 89, 91. The conveyance was made by Litch at the request of George C. Winchester, in whose favor Litch held the land on a resulting trust. On December 1, 1876, the tenant, at the request of her husband, George C. Winchester, released her dower in real estate, then mortgaged by him to other persons; and, in consideration of this release, he

promised that he would convey to her the land demanded, and other property, all of which was only a fair equivalent for the release of dower. No claim was made that, at the time of this promise, George C. Winchester was not solvent; and the mortgage is still outstanding. There was evidence that, at the time of the conveyance, George C. Winchester was insolvent, and procured the conveyance to be made, not only for the purpose of performing his promise, but also for the purpose "of effecting a fraud upon the insolvency laws;" and there was also evidence that the tenant had then reasonable cause to believe that her husband was insolvent, and that the conveyance was made "in fraud of the laws relating to insolvency."

This case is like *Holmes* v. *Winchester*, 133 Mass. 140, except that it is an action at law, and not a suit in equity, and the property in dispute is real, and not personal, property. As the tenant has in form the legal title, she can set up in support of it any equities that will avail her. The conveyance was made upon an executed consideration which must be regarded as valuable, and it is assumed that the agreement between husband and wife was oral. Until the decision in *Holmes* v. *Winchester*, *ubi supra*, it had never been declared or decided in this Commonwealth that, by an executory agreement made directly between husband and wife, although founded on a valuable consideration moving from her, a trust in his property could be created which she could enforce. A husband may be a trustee for his wife, and is often held to be such when he has received her separate property or its proceeds, or when he has covenanted with a third person, or agreed with a third person, for a valuable consideration, to hold a specific part of his own property as trustee for his wife. But when the property has never been hers, and has not been purchased with her property, the trust, if established at all, must arise from the contract; and in this case the contract was made directly between the husband and wife. If no trust, nor anything in the nature of a trust, was created, then the conveyance was made in payment or discharge of a preëxisting obligation. In *Atlantic Bank* v. *Tavener*, 130 Mass. 407, there was no trust; the land was conveyed to the wife in payment of a loan of money, and it was found that the conveyance was not made for the purpose of delaying,

hindering, or defrauding creditors. But if a trust in his property can be created by an oral executory agreement made directly between husband and wife, this can only be done in reference to personal property. A trust in land cannot be so created; and it is now held that, under an oral agreement to convey land, payment of the whole purchase money does not create a trust in the land, or enable the vendee to obtain specific performance, because of the statute of frauds. Gen. Sts. *c.* 100, § 19; *c.* 105, § 1. *Blodgett* v. *Hildreth,* 103 Mass. 484, 486. *Glass* v. *Hulbert,* 102 Mass. 24, 28. *Ahrend* v. *Odiorne,* 118 Mass. 261, 268. *Thompson* v. *Gould,* 20 Pick. 134. *Basford* v. *Pearson,* 9 Allen, 387. *Ex parte Hall,* 10 Ch. D. 615, 619.

Without considering, then, the general incapacity of a wife to make contracts with her husband, or to enforce in equity contracts against him, no trust was created in this case, and the contract was not one that would have been specifically enforced. If the husband had not procured the conveyance to be made, the land could have been attached by his creditors, and although the legal title was in Litch, the equitable estate of the husband in it would have passed to his assignees in insolvency. The agreement has, however, been executed by the husband, but the rights of the wife, in the most liberal view of the law, cannot be greater than those of a third person, who, under similar circumstances, had received such a conveyance.

An agreement to give future security is an executory contract, and " imposes no higher legal obligation upon the debtor than his promise of payment, involved in the contracting of the debt. And his fulfilment of the one is equally open to objection as a preference as is his fulfilment of the other." *Forbes* v. *Howe,* 102 Mass. 427, 435. *Ex parte Ames,* 1 Lowell, 561.

If the oral agreement of the husband was that, at some time in the future, he would discharge his obligation to his wife by conveying to her this property, as this agreement neither created a trust, nor conveyed to her any interest in the land, his subsequent performance of the agreement would seem to be within this rule.

If the agreement was that the conveyance should be made at the same time as the release of dower, and this was postponed,

against the consent of the wife, by the husband fraudulently, or because he believed that his wife could not enforce the agreement against him, or from some other cause, the question involved becomes one of more difficulty; and *Nickerson* v. *Baker*, 5 Allen, 142, is relied on. There may be a distinction between an agreement to convey property presently, the consideration of which is paid, but where delay in making the conveyance is occasioned by some difficulties which have arisen in the course of the business, and an agreement to convey property at some future time, or when required in the future.

In *Nickerson* v. *Baker*, *ubi supra*, the instruction to the jury was, that the facts set forth "would not invalidate the conveyance, if the purchase was made in good faith, and no credit was given." The court say, "Upon the payment of the entire purchase money to the vendor, in equity he held the estate in trust for the benefit of the party paying the same." It was formerly held that payment of the purchase money was such a part performance as took an oral agreement to convey land out of the statute of frauds; but that doctrine is now overruled. *Blodgett* v. *Hildreth*, and the other cases, *ubi supra*. 1 Story Eq. Jur. § 760. Fry on Spec. Perf. §§ 588, 589. Browne on St. of Frauds, § 461.

In this case, the consideration was the release of dower, and not the payment of money; but we have been shown no case in this Commonwealth which regards this as a material distinction. Mrs. Winchester could recover against George C. Winchester, if she were not his wife, the value of the dower released, if he refused to convey. The part performance which has been insisted on here, as, in the absence of fraud, taking the case out of the statute of frauds, has been in the nature of a part performance of the contract to convey, — such as letting into possession, — and is something more than performance by the vendee of his part of the contract. *Basford* v. *Pearson*, *ubi supra*. *Potter* v. *Jacobs*, 111 Mass. 32, 37. *Wall* v. *Hickey*, 112 Mass. 171.

In *Nickerson* v. *Baker*, *ubi supra*, the court also say: "The execution of the deed may, under the circumstances, be held to relate back to the time of the payment of the money, and the first existence of the duty to give a deed." In *Ex parte Ames*, *ubi supra*, Lowell, J., says: "But I have always ruled that

security fairly given, as part of the same transaction as the loan, could not be invalidated by a change of the borrower's situation *re infecta*, as if the money were advanced while the mortgage was in course of preparation, and the debtor fails in the mean time. I have not seen or known of any case which brings up the somewhat nicer question, argued here, whether specific and definite security, unconditionally stipulated for in writing, may be given after a lapse of time and a change of circumstances. This may depend on whether the contract is one that a court of law or equity would enforce *in invitum.*" It is on the ground that the conveyance of the shares was a part of the same transaction as the payment of the money, that *Sparhawk* v. *Richards*, 12 Nat. Bank. Reg. 74, was decided. In *Post* v. *Corbin*, 5 Nat. Bank. Reg. 11, 13, the court found that there had been such an "actual possession under the agreement and performance of it" as "clearly takes the case out of the statute requiring the agreement to be in writing." See also *Potter* v. *Jacobs, ubi supra.*

In the present case, there is no evidence recited in the exceptions tending to show that the husband practised any fraud upon the wife in obtaining her release of dower and withholding his conveyance, or that the delay was not with her assent. It does appear that, up to the time of the conveyance, "nothing had been done in execution of said alleged agreement." The evidence recited is consistent with the view that she did not expect a present conveyance from her husband, but left it to be made by him at some time in the future, and it was actually made more than two years and four months after the release of dower. The conveyance cannot therefore be considered a part of the same transaction as the release of dower; and as it was a conveyance which the husband could not have been compelled to make, even if the wife were not under a disability to enforce agreements against him, we think it must stand upon the footing of a conveyance made by a husband to a wife in payment or discharge of a preëxisting obligation, and, if made in fraud of the laws relating to insolvency, may be avoided by the assignees. If the wife can be regarded as a creditor of her husband, or as a person having a claim against him, within the meaning of the Gen. Sts. *c.* 118, § 89, then the conveyance may be avoided under that section; otherwise, under

§ 91. Under this view of the law, the tenant was not entitled to the ruling asked for. The instructions given are not set out with particularity, except the instruction that the facts, "if proved, would constitute a good consideration for such conveyance at common law," which was correct. No specific objections appear to the remaining instructions.

*Exceptions overruled.*