C. WEBSTER BUSH *vs.* HENRY P. BOUTELLE.

Worcester. September 30, 1891. — March 31, 1892.

Present: FIELD, C. J., ALLEN, HOLMES, KNOWLTON, MORTON, LATHROP, & BARKER, JJ.

*Delivery of Deeds as Collateral Security — Insolvent Debtor — Preferences.*

A., who was insolvent and knew himself to be so, hired money of B., who had reason to believe A. insolvent, upon the proposal made by A. at the same time, and as part of the request for the loan, to give B. real estate as security therefor. Owing to causes over which B. had no control, nearly two weeks elapsed before A. was able to deliver to B. warranty deeds of two lots of land as security for the loan. A little over a month thereafter A. filed his voluntary petition in insolvency. *Held,* on a bill in equity brought by the assignee of A. against B. for a reconveyance, or for an order compelling B. to pay the petitioner the value of the lands so conveyed, that, in the absence of evidence that B. had reason to believe that the conveyances were made in fraud or evasion of the provisions of the insolvent law, a decree should be entered that the deeds were taken as security, and allowing the assignee, if he should so elect, to redeem within a certain time upon paying what should appear to be due; otherwise, the bill to be dismissed with costs.

BILL IN EQUITY, brought by the assignee in insolvency of Cyrus F. Boutelle, to compel the defendant to convey to the plaintiff certain lands originally conveyed by the insolvent in alleged fraud of the insolvent laws, or to pay the value thereof to the plaintiff. The case was submitted to the Superior Court,

and, after a decree for the plaintiff, to this court, on appeal, on agreed facts, in substance as follows.

The insolvent's voluntary petition was filed on June 3, 1889. On April 10, 1889, Cyrus, who was insolvent and knew himself to be so, made a note for $1,000, payable to the order of the defendant, who had reason to believe Cyrus then insolvent, and the defendant loaned him the money thereon, upon the written agreement of Cyrus that he would convey or mortgage to the defendant, as security for said loan, the land described in the deeds in question. And in accordance with and in fulfilment thereof, Cyrus conveyed to the defendant said land on April 23, 1889, the delay being due to the absence of the insolvent as a witness, and to other pressing business.

If the deeds were in contravention of the insolvent law, a decree was to be entered to that effect; otherwise, a decree affirming their validity as security, and any further decree that might be proper.

*W. S. B. Hopkins*, for the defendant.

*E. P. Pierce*, for the plaintiff.

MORTON, J. The question in this case is whether the deeds from Cyrus F. Boutelle to the defendant were given in contravention of the insolvent law.

It is stated in the agreed facts, that at the time the defendant took them, and when the loan was made for which they were given to him as security, Cyrus was insolvent and knew himself to be so, and the defendant had reason to believe him to be so. It is not stated that the deeds were taken or that the money was advanced by the defendant with a view to enable Cyrus to prefer the bank, or to evade in any way the insolvent law. That is denied in the defendant's answer. We understand the question, therefore, to be whether, on the agreed facts as they stand, without anything more, the deeds as matter of law were in contravention of the insolvent law.

It appears that Cyrus had a note coming due at a bank in Fitchburg. The day before it fell due the indorsee declined to renew it. Cyrus thereupon applied to the defendant, saying that the action of the indorsee put him in a tight place, and asking the defendant to get the money for him on his (Cyrus's) note, and saying he would give the defendant security on two

lots, naming them, either by mortgage or warranty deed. Instead of getting the money in the manner Cyrus suggested, the defendant himself advanced the money and kept the note, which was dated April 10, 1889. Owing to his absence at Worcester as a witness, and by reason of other pressing business, Cyrus was unable to complete the transaction till April 23, when he made and delivered as security to the defendant warranty deeds of the two lots.

The petitioner contends that the arrangement between the defendant and Cyrus contemplated the giving of security at a future time, and not as a part of or contemporaneous with the lending of the money, and that when the defendant received the deeds he took them as an unsecured creditor receiving security for an unsecured debt. We do not think the transaction can be so regarded.

The proposal to give security was made at the same time as and as a part of the request for the loan. It was made before the money was lent, to induce the lending of it, and the money was lent, for aught that appears, in good faith on the promise of the security. The only reasonable construction to be given to the letter of Cyrus is that it was expected and intended by the parties that the lending of the money and the giving of the security would be contemporaneous, and that Cyrus understood that he was to give, and the defendant that he was to receive, present security for a present loan. The accidental delay could not affect the real character of the agreement, or what was done. The situation of the debtor remained unchanged, and there is nothing to show that the delay was for the purpose of giving credit. When the security was given, equity would treat it — on the principle that a thing is considered done at the time when it ought to have been done — as if it had been given at the time agreed, and at law possibly the interval might be disregarded, and the agreement and the giving of the deed be regarded as contemporaneous. *Gardiner* v. *Gerrish*, 23 Maine, 46. 1 Story, Eq. Jur. § 649. *Nickerson* v. *Baker*, 5 Allen, 142. *Hawks* v. *Locke*, 139 Mass. 205. *Commonwealth* v. *Devlin*, 141 Mass. 423, 431. *Cartwright* v. *Wilmerding*, 24 N. Y. 521, 533, 534.

The cases relied on by the petitioner on this branch of the

case are readily distinguishable from this case. In *Blodgett* v. *Hildreth*, 11 Cush. 311, the agreement to give security was clearly executory, and at the time the security was given there was clearly an antecedent debt. In *Forbes* v. *Howe*, 102 Mass. 427, a former mortgage was surrendered and a new one was taken on other property to secure a debt that had existed some time. The second mortgage was clearly invalid. The same is in substance true of *Simpson* v. *Carleton*, 1 Allen, 109. *Holmes* v. *Winchester*, 135 Mass. 299, is the strongest case cited by the petitioner, but the conveyance which was the subject of controversy was not made till two years and four months after the time when it should have been made. The court expressly said that the evidence was " consistent with the view that she [the plaintiff] did not expect a present conveyance from her husband, but left it to be made by him at some time in the future." The case of *Copeland* v. *Barnes*, 147 Mass. 388, stands on the same ground in effect as *Forbes* v. *Howe*, 102 Mass. 427, as does also *Paine* v. *Waite*, 11 Gray, 190.

On the other hand, we think the view which we have taken is supported by numerous authorities. *Williams* v. *Coggeshall*, 11 Cush. 442. *Nickerson* v. *Baker*, 5 Allen, 142. *Stetson* v. *O'Sullivan*, 8 Allen, 321. *Alden* v. *Marsh*, 97 Mass. 160. *Parsons* v. *Topliff*, 119 Mass. 245. *Atlantic National Bank* v. *Tavener*, 130 Mass. 407. *Holmes* v. *Winchester*, 133 Mass. 140. *James* v. *Newton*, 142 Mass. 366. *Tiffany* v. *Boatman's Institution*, 18 Wall. 375. *Cartwright* v. *Wilmerding*, 24 N. Y. 521. *Ex parte Ames*, 7 Nat. Bankr. Reg. 230. *Sparhawk* v. *Richards*, 12 Nat. Bankr. Reg. 74.

The fact that the agreement related to the conveyance of real estate was not, in *Nickerson* v. *Baker*, 5 Allen, 142, regarded as a valid objection. Moreover, the agreement has been executed and the defendant has got his security, and as the court said in *Holmes* v. *Winchester*, 135 Mass. 299, 302, " can set up . . . any equities that will avail her." As already said, the money was lent and the security taken, for aught that appears, in good faith. It is not enough to avoid the conveyance, that Cyrus was insolvent when it was made, and knew himself to be so, and that the defendant had reason to believe him to be so, if the conveyance was not made to secure an antecedent debt, or with any inten-

tion on the part of the defendant to defeat the provisions of the
insolvent law, or with reason to believe that such was the pur-
pose of Cyrus, but was given as security for a debt then incurred.
*Nickerson* v. *Baker*, 5 Allen, 142. *Tiffany* v. *Boatman's Institu-
tion*, 18 Wall. 375. It does not appear that such was the intent
of the defendant, or that he had reason to believe that such was
the purpose of Cyrus. There is nothing stated as to the nature
of the business of Cyrus or his means, or tending to show that
these conveyances were out of the usual or ordinary course of
his business, which the statute makes *prima facie* evidence of
such a purpose. For aught that appears, his property may
have consisted largely of real estate, and this may have been
with him a customary mode of raising money at any time when
he was pressed. No doubt the defendant had reason to know,
and did know, that Cyrus intended to pay the note at the bank.
But whether he had reason to believe that such a payment
would be in fraud or an evasion of the insolvent laws would
depend on the situation of Cyrus, the amount of his property,
the nature of his business, whether he could reasonably hope
to go on, and other circumstances which are not stated. It
cannot be said that, from the mere fact that a person lending
money to another in embarrassed circumstances knows that the
borrowed money is to be applied to the payment of a prior debt,
the lender has reason to believe that the intended payment will
be in fraud or an evasion of the insolvent law. Possibly the
borrower may succeed in going on, in which case the payments
clearly would not be fraudulent. Even if he fails, there may
have been fair ground for the expectation that he would not
fail. A debtor in embarrassed circumstances may borrow, and
a lender may lend, even with knowledge that the borrower in-
tends to apply the money to the payment of his debts, so long
as the loan is made in good faith and without any fraud upon,
or evasion of, the provisions of the insolvent law. *Tiffany* v.
*Boatman's Institution, ubi supra.*

It does not appear from the agreed facts that the defendant
had any reason to believe that there was to be any fraud upon,
or evasion of, the provisions of the insolvent law. A majority of
the court think that the decree of the Superior Court should be
reversed, and that, as it is conceded that the deeds were taken

as security, a decree should be entered to that effect, allowing the assignee, if he shall so elect, to redeem within a certain time, upon paying what shall appear to be due; otherwise,

*Bill to be dismissed with costs.*