ALFRED S. CLARKE & another, assignees, vs. SECOND
NATIONAL BANK.

Hampden.     October 16, 1900. — January 1, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, LATHROP, & HAMMOND, JJ.

In an action by assignees in insolvency to recover money paid to the defendant as
an unlawful preference, the condition and intent of the debtor may be proved
by facts of which the creditor had no knowledge, if the creditor's reasonable
cause to believe that the debtor was insolvent or in contemplation of insolvency
can be shown from any other source. On this ground much evidence excepted
to in this case was held to be admissible.

In a suit by assignees in insolvency to recover as an unlawful preference money
paid to the defendant as part payment on a note not yet due, the fact that no
rebate was allowed for the prepayment on a final settlement of the note after
the preference, was held to be evidence that there was no intent to allow a re-
bate at the time of the preference. So a direction to a bookkeeper to enter on
a certain day a transaction that occurred some time before, was held to be evi-
dence to show that he was not directed to enter it at the usual time.

Where, in a case tried by a judge without a jury, one of the parties pursues a gen-
eral policy of obstruction by excepting to nearly every ruling of the presiding
judge, the party so conducting his case may be required, in order to prevail on
an exception, to show that he called the attention of the judge to the ground of
his exception.

The recipient of a written offer accepted by him cannot testify to what he under-
stood to be its meaning, if the testimony is offered for no other purpose than to
show the meaning of the contract.

If the evidence as a whole on a certain subject so strengthens each part by the
bearing of all the rest upon it that the effect of each part is bound up with the
effect of the whole, the presiding judge cannot be required to take up the items
separately and declare them inadequate as if they stood alone.

A part payment upon notes indorsed by persons of undoubted credit may be an
unlawful preference under the insolvent laws. The rule to the contrary implied
by Stevens v. Blanchard, 3 Cush. 169, disapproved, on the ground that it fails to
make distinction between the payment of a secured note which releases prop-
erty of the debtor from a lien of equal amount, and the payment of an indorsed
note which does not.

Ex parte proof and allowance of a claim in insolvency does not bar the assignees
from recovering as an unlawful preference the amount paid by the debtor on
such claim.

In an action by assignees of an insolvent corporation to recover from a bank as an
unlawful preference a payment upon a note of the insolvent corporation indorsed
by one R., who was its president and one of its active managers, and was also
a director of the defendant bank, and who, with the treasurer of the insolvent
corporation, conducted the transactions relied upon to constitute the preference,
it was held, that there was no sufficient evidence that R. was acting in behalf
of the bank in any of these transactions, and that the mere fact that R. was

a director of the bank would not charge the bank with his knowledge of the condition of the insolvent corporation or with his intention in making the payment on the note. *Held, also,* that although the finding for the plaintiff by the judge who tried the case without a jury was justified by the evidence, if every correct ruling had been given, his refusal without explanation to rule that the bank could not be charged with notice through R. as a director, entitled the defendant to a new trial.

CONTRACT, brought by the assignees in insolvency of the Warwick Cycle Manufacturing Company, to recover the sum of $10,000 and interest thereon, alleged to have been paid to the Second National Bank of Springfield as an unlawful preference.

The case was tried before *Aiken,* J., without a jury.

The payment of $10,000 was made by the insolvent company on November 13, 1897, upon its note for $13,000 held by the defendant bank, and due by its terms on January 27, 1898. This note was indorsed by George A. Russell and Alpha O. Very. Russell was president of the insolvent company and Very its treasurer, and the two were the active managers of the business of the company. Russell was also, at the time of the transaction relied on to show the preference, a director of the defendant bank. Russell and Very planned and carried out the payment on the note.

The facts were in controversy, but a statement of the conclusions of fact warranted by the evidence appears in the opinion of the court.

The defendant during the trial took one hundred and five exceptions to the admission and exclusion of evidence, and at the close of the evidence requested the court to make the following rulings :

" 1. Upon the whole evidence and the pleadings in the case the plaintiffs are not entitled to recover.

" 2. There is no sufficient evidence that the defendants received the payment having reasonable cause to believe the Warwick Cycle Company to be insolvent or in contemplation of insolvency, or that such payment was made in fraud of the laws relating to insolvency, and the verdict should be for defendant.

" 3. The fact that payment was made before the debt upon which same was applied matured or became payable is not *prima facie* evidence that the same was made out of the usual and ordinary course of business.

" 4. The fact that the payment was made before the debt upon which same was applied matured or became payable is not evidence that defendant had reasonable cause to believe that the said Warwick Cycle Company was insolvent or in contemplation of insolvency, or that said Warwick Cycle Company made such payment in fraud of the laws relating to insolvency.

" 5. If the defendant had notes of the Warwick Cycle Company indorsed by person or persons of undoubted credit, and received from debtor in part payment thereof said sum of ten thousand dollars, such payment was not an unlawful preference within the contemplation of the statute.

" 6. There is no sufficient evidence that Russell was acting for or in behalf of the defendant when said payment was made, and his view or intention with reference thereto cannot affect the defendant's rights or be in evidence that the defendant had reasonable cause to believe that the Warwick Cycle Company was insolvent or in contemplation of insolvency, or that said payment was made in fraud of the laws relating to insolvency.

" 7. There is no evidence that Russell was acting for or in behalf of the defendant in any of the transactions between said defendant and the Warwick Cycle Company, and his knowledge or views with reference thereto or of the condition of the company cannot be imputed to the defendant.

" 8. The mere fact that Russell was a director of the defendant would not charge or impute to the bank his knowledge of the condition of the Warwick Cycle Company, or the view or intent possessed by him at the time said payment was made or in reference thereto.

" 9. If Russell or Very or both made the payment to defendant with a view to lessen their contingent liability as indorsers and to prefer themselves and not the defendant, then plaintiff cannot recover.

" 10. There is no sufficient evidence that the Warwick Cycle Company was at the time of said payment insolvent.

" 11. There is no sufficient evidence that the Warwick Cycle Company at the time of said payment contemplated insolvency.

" 12. There is no sufficient evidence that the Warwick Cycle Company made said payment with view to give a preference to the Second National Bank, and the plaintiffs cannot recover.

" 13. Unless said Warwick Cycle Company made said payment with the intent to prefer said Second National Bank over its other creditors, the plaintiffs cannot recover in this action.

" 14. The proof by said defendant in and the allowance thereof by the Court of Insolvency of said note of thirteen thousand dollars less said sum of ten thousand dollars paid and credited thereon, and the payment of dividends thereon by said plaintiffs, preclude said plaintiffs from a recovery in this action.

" 15. The proof by said defendant in and the allowance thereof by the Court of Insolvency of said note of thirteen thousand dollars less said sum of ten thousand dollars paid and credited thereon, and the payment of dividends thereon by said plaintiffs constitute an affirmance of the validity and legality of said payment of ten thousand dollars, and the plaintiffs cannot recover in this action."

The court refused to rule as requested, and found for the plaintiff in the sum of $11,023.33 ; and the defendant excepted.

*W. H. Brooks & W. Hamilton,* (*J. B. Barnes* with them,) for the defendant.

*J. B. Carroll & W. H. McClintock,* for the plaintiffs.

HOLMES, C. J.   This is an action brought by the assignees in insolvency of the Warwick Cycle Manufacturing Company to recover $10,000 paid by the company to the defendant on November 13, 1897, as an unlawful preference.   The facts are in controversy but the following statement is warranted by the evidence.

In November, 1897, the company's assets were not enough to pay its debts.   The annual meeting of the company was on the 6th.   Before that date Very, the treasurer, had changed valuations in the statement of assets and had included worthless accounts so as to make the company appear solvent at the meeting, but at the meeting Bannigan, a stockholder and a creditor of the company for a large sum, stated that the capital was impaired, and called for a committee to appoint a person to audit the books and an auditor was appointed.   Very knew this and knew that the company had lost $60,000 in the last business year.   He also had been notified in his capacity of the company's representative that Bannigan would not renew notes of

the company held by him, one of which, for $50,000, fell due on November 15, and one, for $25,000, fell due on November 22. It is at least a fair inference that Very knew that the company would not be able to pay its notes. The foregoing facts warrant the further inference that the company knew that it was insolvent.

One Bill, the president of the defendant bank, was present at the meeting and, it may be inferred, heard what was said at it. He knew, by his own admission, that the debts of the company exceeded its capital. There was also present one Russell, who was the president of the cycle company and a director of the defendant bank, and who along with Very was an indorser of notes of the company held by the bank. On November 12, the bank president's son, who was a director of the cycle company, resigned his office with the knowledge of his father, and it hardly would be a strained inference that he did so fearing the personal liability of directors in the situation in which he found himself, and that his father supposed that to be his motive. He seems to have been on confidential terms with his father and interested in the bank, in which he became a director soon after.

In this state of things, the representatives of the company and the bank having the knowledge which we have stated, and the auditor having gone to work upon the books, Very and Russell made a large sale, it would seem of pretty much all the wheels which they could scrape together from the company's own place and from distant cities. On the evidence it might be found that the price was low. Before the transaction was completed checks were received for part of the price, to the amount of $10,000. These checks were not deposited in the usual way, always adopted by the company theretofore, but were transferred to the bank to be credited on the notes held by it, although none of those notes were due, or would fall due until after the above mentioned notes for $50,000 and $25,000 held by Bannigan and other notes due to him and to others. They were so credited by the defendant's cashier on a note indorsed by Russell and Very, and no rebate of interest ever was allowed for the prepayment. The company never had anticipated payment of its notes before. The company's bookkeeper was not notified of the sale

or payment until November 24, after the auditor had left, and, when the bookkeeper remonstrated, he was told that it was in order that he might be able to say truthfully that he did not know of it. We do not see how the judge who tried the case could have hesitated to find that the company intended a preference.

The company went into insolvency on February 26, 1898, in consequence of a suit and attachment by Bannigan. When demand was made by the assignees for repayment the president and cashier respectively said that they had accepted the payment under advice of counsel. Taking all the facts, it is a mild conclusion to say that the bank had notice of the condition of the cycle company, and that the manifestly necessary result of the large payment made to the bank would be to give it a preference. There is at least a plausible argument that a preference actually was intended by all parties concerned in the transaction.

The case was tried by a judge without a jury, and he considered that the allegations of the declaration were proved, and found for the plaintiffs. The finding would have been justified by the evidence properly admitted, if every correct ruling that could have been asked for by the defendant had been given. Under such circumstances we are not disposed to deal very critically with matters of detail.

We have scrutinized every exception that was taken to the admission of evidence, but we do not think it necessary or advisable now to go over them one by one. A large part of them may be disposed of at once by saying that in a case like this there are two things to be proved, on the one hand the condition and intent of the debtor, on the other the reasonable cause to believe etc. on the part of the creditor. The former may be proved by facts of which the creditor had no knowledge if the creditor's cause to believe can be shown from any other source. Therefore the actual state of the company's assets, Very's knowledge concerning them, and his directions as to the conduct in the management of the cycle company with regard to this matter, whether known to the defendant or not, were admissible to prove the company's insolvency and its intent. The fact that no rebate was allowed for the prepayment, although this did not

appear conclusively until the final payment on the note, after the preference, was evidence that there was no intent to allow one at the time of the preference. See *Commonwealth* v. *Rubin*, 165 Mass. 453, 455, 456. So, even more clearly, the direction on November 24 to the bookkeeper to enter the transaction. This is merely a vivid way of showing that he was not directed to enter it at the usual time.

So again the conduct of the company in making the sale, although a step anterior to the payment to which the bank was a party, properly was allowed to be proved as the first step in a scheme of the company to accomplish the desired result by that means. So all conversations of Very before the payment which threw light on his intent while he was one of those who acted for the cycle company were admissible on the principle which we have stated. There is only one matter on which the judge made a slip. A conversation between Very and the bookkeeper was admitted which took place after the insolvency. This was excepted to. But as pretty much everything was excepted to before it went in, and as the defence was conducted in the manner commented upon heretofore in *Commonwealth* v. *Warner*, 173 Mass. 541, 548, we consider that the defendant fairly might be required to call attention to the ground that this was subsequent to the preference, in order to warn the judge that this was something more than part of a general policy of obstruction. This was not done with sufficient clearness, if at all. The judge showed by an express statement at another point of the trial that he had the true rule in mind, and that he did not regard Very's talk after the payment as evidence, so that it fairly may be assumed that he acted on that rule throughout. Furthermore, the evidence was of the most trifling importance, being only that the bookkeeper said that he thought the wheels were sold at a low figure and that the sale would have demoralized the legitimate trade, and that Very replied that he did not approve of it, that it was done by Russell and Bill. Of course the element of hearsay in Very's talk was not called for as such and was not taken as tending to prove the facts reported. We are of opinion that justice does not require a new trial on this ground.

Only one other matter of evidence requires specific mention.

It appeared that the purchaser of the wheels, after a dispute as to details, wrote a letter offering a settlement to Russell, the president of the company, in which it said, " We further agree to give you the right to redeem the entire lot of wheels at exact cost to us, etc., the option to be good for one week from date." The defendant offered to show by Russell that the letter meant, and that he understood it to mean, that if the cycle company did not accept the proposition of the letter it might take back the wheels on the terms proposed. This is very near to the true construction, except that on its face the letter probably would be construed to mean that the purchaser made that agreement, even if the cycle company did accept its terms, a construction which perhaps might give a look to the sale of being for a week at least a mortgage. If the evidence had been offered solely on the question of Russell's intent, (he being one of the managers of the transaction,) it might have been admissible although not very important. *Honsucle* v. *Ruffin,* 172 Mass. 420. But the form of the offer was to show the meaning of the contract, Russell's understanding being added merely as emphasizing the meaning, and from that point of view the evidence properly was rejected. We discover nothing else in the exceptions to evidence which seems to us to require observation.

We come now to the rulings asked. As to these we must remember that the judge tried the case without a jury and that he found the averments of the declaration proved, and that it is not only possible but probable that he laid some of the requests aside as immaterial to his view of the facts. Nevertheless each must be considered fairly. We only regret that he did not explain the grounds of his action in the bill of exceptions. If he had done so, probably our labors would have been lightened. The first, second, tenth, eleventh, and twelfth requests have been disposed of by our statement of the case. The third and fourth were attempts to require a ruling on a particular item, or, so to speak, stone in an arch of proof. To this the defendant was not entitled. If the evidence as a whole so strengthens each part by the bearing of all the rest upon it that the effect of each part is bound up with the effect of the whole, the judge cannot be required to take up the items separately and declare them inadequate as if they stood alone. See *Commonwealth* v. *Williams,*

171 Mass. 461, 462; *Collins* v. *Greenfield*, 172 Mass. 78, 81; *Pomeroy* v. *Boston & Maine Railroad*, 172 Mass. 92, 94.

The fifth request embodies the rule seemingly implied by *Stevens* v. *Blanchard*, 3 Cush. 169. It seems to us that the decision in that case did not sufficiently distinguish between the payment of a secured debt which releases property of the debtor from a lien of equal amount, and a payment where the release of the security does not increase his assets. We cannot but think that the question of preference ought to be determined chiefly by its effect on the assets of the debtor rather than by its effect on the position of the creditor. The proposition as stated by the Supreme Court of the United States is that the debtor's "dealing will stand if it leave his estate in as good plight and condition as previously." *Cook* v. *Tullis*, 18 Wall. 332, 340. *Stewart* v. *Platt*, 101 U. S. 731, 743. "The reason is, that the exchange takes nothing away from the other creditors." *Sawyer* v. *Turpin*, 91 U. S. 114, 121. *Forbes* v. *Howe*, 102 Mass. 427, 430, 433. The objection to a preference is stated in the same way by this court in a case later than *Stevens* v. *Blanchard*. The law "forbids, therefore, the payment of one creditor, because it prevents such equal distribution; such is not the effect of a sale of property, for an adequate consideration, or the borrowing of money and giving security therefor, in good faith and with no intent to defraud. These acts do not diminish the fund to be distributed, or create inequality." *Williams* v. *Coggeshall*, 11 Cush. 442, 447. The payment of a debt secured only by the personal undertakings of others, although it may not create inequality does diminish the fund to be distributed. It may appear in such a case as matter of fact that the intent of the insolvent is to prefer the person collaterally liable and not the holder of the security, and that, coupled with the fact that the payment was made to the guarantor, not to the holder, was the ground of decision in *Abbott* v. *Pomfret*, 1 Bing. N. C. 462, relied on in *Stevens* v. *Blanchard*. But that is excluded in the present case by the findings of the judge. The other case cited, *Thompson* v. *Beatson*, 7 Moore, 548, was payment of a debt secured by a lien on ship's papers, the bankrupt's property, and Mr. Justice Park said: "If the ship's papers were of no use or value to the bankrupt, it would be a different question." We

are of opinion that the fifth request for a ruling rightly was refused.

The ninth and thirteenth requests are met by the finding that the averments of the declaration were proved. It is found that the cycle company intended to prefer the defendant, and therefore a ruling that such intent was necessary or that a different intent would not be enough was superfluous. The presence of a self-regarding motive in Russell and Very is consistent with an intent to prefer the bank, and if not, would have been excluded by the finding.

As to the fourteenth and fifteenth requests, the claim was allowed on the same day that the assignees were appointed — not improbably before their appointment. Without further evidence it cannot be considered that they have ratified or estopped themselves from disaffirming the preference by paying dividends upon the claim. So far as has been pointed out to us, they have not lost their right to have the claim expunged. The allowance of the claim at that stage implies what is obvious, that the reason for disputing it was not apparent and was not passed upon, (Pub. Sts. c. 157, § 32,) and that therefore the allowance was not an adjudication upon the matter but simply an *ex parte* proceeding subject to a motion to expunge at a later date if the assignees when appointed should find ground for it. Assuming that such an *ex parte* allowance is a judgment, it does not purport to extend so far as to determine the collateral question of preference. Pub. Sts. c. 157, §§ 32, 33. This limitation of its effect might be conceded without touching the point upon which there was a difference of opinion in *Nashua & Lowell Railroad* v. *Boston & Lowell Railroad*, 164 Mass. 222, 226. See further *Thomas* v. *Griffith*, 2 De G., F. & J. 555. The point was raised in *Stevens* v. *Blanchard*, 3 Cush. 169, but seems to have been abandoned by the eminent counsel for the defendant, or to have been disregarded by the court.

There remain for consideration the sixth, seventh, and eighth requests. With regard to these we cannot help suspecting that if the judge had explained his action it might appear that it was justified by his view of the facts, but we do not feel warranted in assuming it to have been so in the absence of explanation. If the eighth had stood alone, the refusal of that perhaps might

have been justified on the same grounds as the refusal of the third and fourth, although of course it embodied a correct proposition of law.    Zane, Banks & Banking, § 111.    It is not unlikely, also, that the sixth and seventh were refused because the judge was satisfied by other evidence that there was a preference to the knowledge of the bank, and therefore thought it unnecessary to decide, either as matter of fact or matter of law, what the precise position occupied by Russell at the different stages of the transaction might be.    But one of the ways in which the plaintiff might seek to charge the bank with notice was through Russell as a director, and the evidence did not warrant its being charged in that way.    We are of opinion that, in view of its requests, the defendant was entitled to be assured that the judge would not come to a conclusion against it on the ground that Russell, as director or otherwise, represented not only the cycle company but the bank.                     *Exceptions sustained.*