EDWIN N. HILL & another, assignees, *vs.* HIRAM A. MARSTON & others.

SAME *vs.* CARRIE A. MARSTON & others.

Suffolk.    January 22, 1901. — March 2, 1901.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

A promise in general terms to give security out of one's property, is merely a personal undertaking having no application to specific property, and does not prevent a subsequent conveyance in pursuance of such promise, made in contemplation of insolvency, from being an unlawful preference.

If any part of a sale or conveyance is fraudulent as an unlawful preference, the whole is void.

A bill of sale of chattels recorded as such, taken as security for a debt but not recorded as a mortgage, gives no title without delivery of the chattels.

HOLMES, C. J.    This is a bill in equity brought by the assignees in insolvency of the Phœnix Rattan Company to set aside two bills of sale, absolute in form but mortgages in fact, on the ground that they were preferences. As we think it very plain that the conveyances cannot stand, we shall not discuss the evidence at much length. The bills of sale were executed by the defendant Marston, president of the insolvent company, to himself and his wife, on May 10. Most of the testimony had to be got from him, and he told no more than he had to and hardly was always candid.

To begin at the end, on May 22 the company attempted to execute an assignment for the benefit of creditors, which failed. On that day, of course, the company was insolvent and was known to be insolvent by Marston. He was general manager

of the company, and must be taken to have known all that there was to know, throughout. He knew that there was no change in its affairs between May 10 and May 22. In short he knew on May 10 also that the company was insolvent, although he does not admit it. His wife was charged with his knowledge, as he acted for her and took the bills of sale for her. Starting with this, we go back to the beginning of the transaction.

In the previous April the company already was in straits for money. It had raised a little in March by pledging its open accounts. It had had a scheme for extending its credit, which had fallen through, and it had another plan for raising money which fell through a little later. It was behindhand in paying its debts, and it had been notified by a bank which held its notes that they must be paid as they matured. In this state of things Marston satisfied one of the notes which was overdue, and sent on from Florida to the bank two new notes indorsed by himself and Mrs. Marston to take up the two which remained in the hands of the bank. According to his account he, as president of the company, agreed orally and, so far as appears, in a private conversation, with his wife, that she should be secured by a bill of sale of sufficient merchandise or by a transfer of sufficient book accounts of the company. He also had an understanding with himself to the like effect. It was in pursuance of this conversation and understanding, he says, that the bills of sale were made. On the books of the company the bills of sale are declared to be security not only for these indorsements but also for accounts due to him and Mrs. Marston by the ledger, which in Mrs. Marston's case embraced a loan of $500 to employees of the company. The bills of sale divided all the property of the company between the president and his wife. It may be mentioned, by the bye, that Mrs. Marston had no property when she signed the note, other than some stock in the Rattan Company.

It is not necessary to point out how unsafe it would be to allow testimony such as we have described to sustain such a transaction at the expense of the other creditors of the company supposing that it purported to state facts sufficient for the purpose. But taking the testimony as literally exact, the facts are not a defence even in Mrs. Marston's case. It is impossible to

treat the promise on or before April 20 and the execution of the bill of sale on May 10 as substantially cotemporaneous and one transaction, on the principle stated in *Hawks* v. *Locke*, 139 Mass. 205, 207, and adverted to in *Bush* v. *Boutelle*, 156 Mass. 167, 169. That principle might be applied if necessary, perhaps, when the promise specified the property to be conveyed, as in *Bush* v. *Boutelle*, and in *Holmes* v. *Winchester*, 133 Mass. 140. But although the property owned by an individual at any one time is specific, a promise in general terms to give security out of one's property is no more specific in its application than a debt, and does not attach to it; although the moment even a simple debtor dies the case changes, and the creditor becomes quasi a *cestui que trust.* Such a general promise is not like a grain receipt for grain in a certain bin; it remains a merely personal undertaking, and " imposes no higher legal obligation upon the debtor than his promise of payment, involved in the contracting of the debt." *Forbes* v. *Howe,* 102 Mass. 427, 435. *Holmes* v. *Winchester*, 135 Mass. 299, 303. Granting this, there can be no question that the other elements of a preference are made out.

Again, the bills of sale would not bind the company until they were ratified by the directors on May 22. *England* v. *Dearborn*, 141 Mass. 590. If we are to assume that the ratification was not conditional upon the assignment for the benefit of creditors going through, which it failed to do, still it would seem that the validity of the bills of sale must be tested as of that date rather than May 10, so that the elements of distance between promise and performance and of knowledge of the company's insolvency become more pronounced. See *Whiting* v. *Massachusetts Ins. Co.* 129 Mass. 240, 241, *ad fin.; Emery* v. *Boston Terminal Co., ante,* 172.

Again, there is no question that, independently of what we have said concerning the ostensible or chief purpose of the bills of sale, they were preferences in so far as they secured the ledger accounts of Mr. and Mrs. Marston. " If any part of the purpose of the sale or conveyance was fraudulent the whole was void." *Crafts* v. *Belden,* 99 Mass. 535, 539.

Again, although this was not the ground of the bill, the bills of sale were recorded as such, but this did not answer the re-

quirement of the statute as to mortgages.  *Williams* v. *Nichols*, 121 Mass. 435.   On the other hand probably it would be impossible for the Marstons to make out that they kept or even took possession of the goods.   Privately putting a hand on some of them while in the possession of another, or fastening tags on a few, without more, probably would be found to have left the previous possession undisturbed.

It is not necessary to go further to show that the plaintiffs are entitled to recover.   The details of the decree must be settled in the Superior Court.

*Decree for the plaintiffs.*

*E. N. Hill*, for the plaintiffs.

*S. Lincoln & S. Robinson*, for the defendant Bell, an attaching creditor.

*W. C. Wait*, for the defendants Marston, submitted the case on a brief.