HARRY J. JAQUITH, assignee, *vs.* JOHN DAVENPORT.

SAME *vs.* ANTONIO F. RICO.

SAME *vs.* JOSEPH H. MORRILL.

Suffolk.   March 13, 1906. — April 9, 1906.

Present: KNOWLTON, C. J., MORTON, LORING, BRALEY, & SHELDON, JJ.

*Insolvency,* Fraudulent preference. *Practice, Civil. Agency.*

In an action by an assignee in insolvency for the value of certain goods and certain sums of money alleged to have been delivered and paid to the defendant by the insolvent debtor as fraudulent preferences, the refusal of a ruling by a judge sitting without a jury on the ground that the ruling requested had become immaterial because he "did not find as a fact upon all the evidence that the sale of the goods and the payments were made in fraud of the laws relating to insolvency" is a finding of fact by the judge that the sale and the payments were not made with the intent on the part of the insolvent and the reason to believe on the part of the defendant which are necessary to sustain the plaintiff's case.

If a judge refuses "to rule in accordance with the third request and the fourth in the terms given," *semble* that the third request is refused absolutely and the fourth in the terms stated.

In a trial before a judge sitting without a jury, if a party asks for a ruling correct in law and applicable to the case, which is refused by the judge, and the judge afterwards decides the case against him, he has a right to know whether the judge in deciding the case did or did not act under the rule of law stated in

the ruling, and if the judge merely says that he declined to give the ruling in the terms stated and does not say what ruling he adopted, an exception by the party requesting the ruling must be sustained.

In an action by an assignee in insolvency to recover from several defendants money alleged to have been paid to them respectively by the insolvent debtor as fraudulent preferences, the following ruling should be made when there are facts in the case to which it is applicable: " The defendants are bound by the knowledge and intent which their agents had, and if any preference was obtained for any defendant by an agent, attorney or representative acting for him in the transaction, or if any conveyance fraudulent under the insolvency statute was made to any defendant, with a knowledge of the fraud on the part of any agent, attorney or representative in the transaction acting for him, the defendant is bound by the agent's knowledge and intent."

Under the insolvency laws if any part of the purpose of a sale or conveyance is a fraudulent preference under the statute the whole is voidable by the assignee.

The payment in full by an insolvent debtor of a note made by him secured to its full value by collateral belonging to him, so that the assets of his estate are not diminished by the payment, is not a fraudulent preference although when the payment is made the holder of the note knows that the insolvency of the maker is impending.

LORING, J.   These are three actions brought by an assignee in insolvency of a firm made up of one Davis and one Hathaway, to recover for goods sold and payments made in violation of the insolvency laws.   The insolvency petition was an involuntary one, and was originally filed on April 25, 1896, against Davis alone.   It afterwards was amended to include the partnership, and the assignee was appointed assignee of the joint and separate estates of both partners.

There was a prior involuntary petition against Hathaway in Bristol County.   But that does not enter into the matters on which the decision here depends.   The case went to an auditor who found in favor of the plaintiff in all three cases for some of the matters complained of.

In the action against Davenport he found for the plaintiff on counts two and three for two sales of cigars.   One lot worth $1,870 was sold on March 11, 1896; the other, worth $1,390, was sold on March 31, 1896.   He also found for the plaintiff on counts four, five and six, for the payments of $61.02 on November 1, 1895; $60 on November 3, 1895, and $300 on December 12, 1895. The other count (count one) against Davenport was waived.

In the action against Rico he found for the plaintiff on count one for the sale of five bales of tobacco on February 28, 1896, worth $1,999.72, and he found for the defendant on counts two,

three and four, in which the plaintiff undertook to recover from Rico three payments of $400 each, made by Davis to Rico, on January 11, 1896. He also found for the defendant on counts seven and nine for the payment to Rico, on or about April 25, 1896, of a note for $150 made by one Torrey and indorsed by Davis. The eighth count was for the same cause of action and was inserted as a matter of pleading only.

In the action against Morrill he found for the plaintiff for the sales of two lots of cigars, one lot on February 25, 1896, worth $2,562.50, the other on March 10, 1896, worth $3,040.

The cases were heard in the Superior Court by a judge sitting without a jury, who found for the defendant in each case and made no further finding except that in refusing the eighth ruling asked for as to the effect of the insolvency proceedings in Bristol against Hathaway alone, he stated that this ruling became immaterial because he "did not find as a fact upon all the evidence that the sale of the goods and the payments were made in fraud of the laws relating to insolvency." The case is here on the exceptions of the plaintiff to the refusals of the judge to make the rulings requested by him.

The plaintiff asked for the following rulings (among others) in all three cases:

"3. The defendants are bound by the knowledge and intent which their agents had, and if any preference was obtained for any defendant by an agent, attorney or representative acting for him in the transaction, or if any conveyance fraudulent under the insolvency statute was made to any defendant, with a knowledge of the fraud on the part of any agent, attorney or representative in the transaction acting for him, the defendant is bound by the agent's knowledge and intent.

"4. If any part of the purpose of any sale or conveyance to any of these defendants, from the insolvent debtors represented by the plaintiff, was fraudulent, the whole was void."

The judge declined "to rule in accordance with the third request and the fourth in the terms given."

If the special finding made in connection with the ruling asked as to the effect of the insolvency proceedings in Bristol is to be interpreted to mean that he did not find that the insolvents made the sales and payments with the necessary intent the third and

fourth rulings were immaterial.   But we do not think that that is the true meaning of that finding.   It is in terms a finding that the sales and payments were not made in fraud of the laws, that is to say, with the necessary intent on the part of the insolvents and the necessary reason to believe on the part of the defendants.   The correctness of this conclusion is borne out by the fact that the judge did not refuse the third and fourth rulings asked for on the ground on which he refused the eighth, namely, that the finding made them immaterial.

Both rulings requested were correct statements of law.   .

As to the third ruling, see *Bush* v. *Moore*, 133 Mass. 198; *Saunders* v. *Russell*, 171 Mass. 74; *Hill* v. *Marston*, 178 Mass. 285, 286; *Atlantic Cotton Mills* v. *Indian Orchard Mills*, 147 Mass. 268.

As to the fourth ruling, see *Crafts* v. *Belden*, 99 Mass. 535; *Peabody* v. *Knapp*, 153 Mass. 242, 243; *Hill* v. *Marston*, 178 Mass. 285, 287.

The parties are not agreed as to the proper construction of the statement in the bill of exceptions in regard to the way these two rulings were dealt with by the judge.   The plaintiff's contention is that the third ruling was refused absolutely and the fourth in the terms stated.   The defendants' contention on the other hand is that both were refused in the terms stated.

If it were material we should agree with the plaintiff.   But in our opinion it is not material.   The rulings requested were right, and if applicable to the case should have been given, certainly in substance.   In our opinion (on grounds which we shall state later on) the rulings were applicable in the Davenport and Morrill cases.   That means that in deciding the facts in these two cases the judge should have proceeded under the rules laid down in these two rulings respectively.   The plaintiff, on asking for a ruling which is correct in law and is applicable to the case to be tried, has a right to know whether in deciding that case against him the judge did or did not act under the rule of law stated in the ruling asked for.   The judge here does not state whether he did or did not act under it when he says that he declined to give it in the terms stated, and does not state what ruling he adopted. The case does not come within the rule applied in *Schendel* v. *Stevenson*, 153 Mass. 351, 355, relied on by the defendants.

It remains to consider whether these rulings were applicable to the cases tried.

Dealing first with the third ruling.  In the action against Davenport the plaintiff's case was in substance that in 1893 Davis and his then partner, Chard, who were dealers in cigars and tobacco, failed.  At that time one Oliver, a cigar broker, borrowed over $10,000 of the defendant Davenport to " settle " the affairs of Davis and Chard.  Beginning in October or November, 1895, and down to the insolvency in April, 1896, Davis and Hathaway, through Oliver, who acted as their agent in carrying on their partnership affairs, bought and sold cigars and tobacco with the proceeds of notes signed by Hathaway or by Davis and Company and indorsed by Hathaway.  Hathaway's credit in the beginning was good.  Davis was insolvent throughout.

The auditor found that the two lots of cigars sold to Davenport were bought by Oliver with the proceeds of notes, as above stated; also that although the defendant testified that he bought these cigars through Oliver of one Von Der Heide as owner, who was a clerk of Oliver's and who claimed also to have been a dealer on his own account, carrying on his business in Oliver's store, the sale was really a sale by the partnership to Davenport, Von Der Heide's name being used as a cover.  The two lots of cigars were found to be worth $1,870 and $1,390 respectively, and were sold for $1,160 and $1,000, or about 66 per cent of their true value.

Davenport died after the hearing before the auditor and his deposition was read at the trial.  He testified that he bought the cigars as the goods of Von Der Heide, through Oliver as a broker, and that " he did not know where the goods [mentioned] in counts two and three of the declaration in his case came from, and did not inquire, and that he had no occasion to make any inquiry of the sort "; that he paid for both lots by checks payable to Von Der Heide, which were indorsed to Oliver and by Oliver deposited in the bank.

The three payments in the Davenport case are not intelligibly described anywhere in the bill of exceptions except in the testimony of Davenport, and we assume that statement of them to be correct.  The $61.02, paid on November 1, 1895, was a payment made by Davis and Company in settlement of a note for $59.50, signed by one Kelman, payable to Davis and Company,

protested at maturity, and finally paid by Davis and Company with protest fees of $1.50 on the date named. Davenport testified that the note was received by him from Oliver, with the understanding that Oliver was to be credited with the proceeds; "and that Oliver was at this time indebted to" him, Davenport. The other two payments were payments of $60 and $300 and were received in settlement of Davis and Company's indorsements of two other notes payable to them, and received by Davenport from Oliver on the same terms. The auditor found that these payments were credited on the debt due to the defendant by reason of the $10,000 lent Oliver to "settle" Chard and Davis's affairs in 1893; that these notes "were all paid by checks of Davis at a time when he was insolvent or in contemplation of insolvency, and were paid with a view to preferring a creditor or a person under liability for him; that the defendant knew or had reasonable cause to believe that Davis was so insolvent or in contemplation of insolvency, and that the payments were made in fraud of the insolvency laws."

On this evidence the judge would have been warranted in finding that in the two sales and the three payments Oliver was getting payment for Davenport for the $10,000 lent by Davenport to "settle" the affairs of Chard and Davis, although nominally lent to Oliver; and the third ruling requested was applicable.

The case made out by the plaintiff in the second, third and fourth counts of the action against Rico was that in October or November, 1895, to accommodate Oliver and without receiving payment therefor, Rico changed three notes for $400 each, with Davis and Company. Rico's notes were not secured; Davis and Company's were secured by fifty thousand cigars. Rico paid his notes at maturity. The auditor found that when Davis and Company's notes fell due Rico "knew of Davis and Hathaway's impending insolvency." In spite of that knowledge Rico accepted from Davis payment of the notes. The auditor finds that "the collateral was returned to Oliver and subsequently sold to pay for Davis's debts." The auditor also found "that the insolvent's assets were not diminished and no harm accrued to any creditor through such a transaction."

We do not see how the third ruling asked for was applicable to this case.

The exceptions to the fifth, sixth, tenth and eleventh counts were waived at the argument.

This leaves the seventh and ninth. The statement made by the auditor of this claim is as follows:

This " count was to recover payment of a note of one Torrey, indorsed by Davis, which Rico received from Oliver in the course of business.

" I find that this was paid by the check of Davis at a period when Davis was in contemplation of insolvency, and Rico had reason to know it; that Torrey had become insolvent in the meantime. I am unable to find that at the time Rico took this note, it was known to him or intended by Davis as a fraudulent preference, and it was not known then, for all that appeared before me, that Torrey could not pay it at maturity.

" I find that it was undoubtedly a preference to pay it, but I do not find that there was any fraudulent intent proven or any knowledge of such intent on the part of Rico, and I therefore find that the plaintiff ought not to recover on this count."

The third ruling was not applicable here.

The case made out in the action against Morrill was that Morrill was a teamster, and met Hathaway and Oliver at the Hotel Reynolds; and, on being told by Oliver that Hathaway was overstocked with goods and needed to raise money, agreed that he would advance the money to pay for two lots of cigars, one worth $2,562.50, the other worth $3,040. What he paid did not appear, but it was found by the auditor to be " considerably below the real value."

The auditor found that in the two sales to Morrill " Oliver was Morrill's agent and partner in the transactions." Although the evidence warranted a finding that this was not the fact, yet so far as we know the judge may have found that Oliver was Morrill's agent and thought Oliver's knowledge immaterial. The exception to the refusal to give the third ruling in the Morrill case must be sustained on all four counts.

We come now to the fourth ruling asked for. In the Davenport case it well might be found that the real purpose of all five transactions was to make payment to Davenport on account of the $10,000 borrowed by Oliver to " settle " Davis's previous insolvency. If it was, each transaction was wholly void.

We do not see how it is applicable in the action against Rico.

In the action against Morrill, it is plainly applicable from what has been said as to the nature of that claim.

This brings us to the separate rulings asked for in the Rico case.

The judge was right in refusing the seventeenth ruling * asked for. The evidence warranted a finding that the tobacco was not sold to Rico, but to one Miller through Oliver, to whom Miller paid the purchase money which was in turn paid by him to Hathaway by giving him credit for it on account. The tobacco was ultimately transferred to Miller by Davis on July 10, 1896, after the plaintiff's appointment as assignee, in whose name it turned out that it had stood in the Custom House. If the judge believed that testimony the plaintiff's case against Rico for a conversion of the tobacco wholly failed. We find nothing in the cases relied on by the plaintiff, (*Burpee* v. *Sparhawk*, 97 Mass. 342; *Crafts* v. *Belden*, 99 Mass. 535, 539; *Copeland* v. *Barnes*, 147 Mass. 388, 390; *Hill* v. *Marston*, 178 Mass. 285, 287,) which conflicts with this.

The judge was right in refusing the twenty-third ruling † asked for. If the tobacco was not sold to Rico but to Miller, and the transfer to him was not made use of, the fact that it was not in the usual course of business was immaterial.

The judge was right in refusing the eighteenth ruling ‡ asked

---

* The ruling requested was as follows: "17. — Upon all the evidence the plaintiff is entitled to recover as a matter of law upon the first count for the value of said five bales of Sumatra Tobacco."

† The ruling requested was as follows: "23. — The transaction with the five bales of Sumatra tobacco under the first count, whether a sale or merely a transfer into Rico's name, was not in the usual course of business of Hathaway, and Rico is thereby bound under the statute with knowledge that Hathaway was then insolvent or in contemplation of insolvency."

‡ The ruling requested was as follows: "18. — Upon all the evidence if the insolvent Davis deposited the cigars mentioned by the auditor as collateral with Oliver, within six months prior to April 27, 1896, and if Oliver and Rico then had reasonable cause to believe that Davis was insolvent or in contemplation of insolvency, and if Davis was then insolvent or in contemplation of insolvency,. the payment out of this collateral of the three notes relied on under the second, third and fourth counts, would constitute a preference to Rico, and, if the foregoing facts are found, the court would be authorized to find an intent to prefer, and in that case should find for the plaintiff."

for. There was no evidence that the three notes which were paid to Rico were paid out of the collateral. The only evidence is the finding of the auditor " that the Davis notes were paid by Oliver, or new notes of Von der Heide's were given for them, and the collateral was returned to Oliver and subsequently sold to pay for Davis's debts."

The judge was right in refusing the twenty-fourth ruling * asked for. The auditor found that the exchange of notes and the payment of the Davis notes which released collateral did not diminish the insolvent's estate, and there was no evidence that it did. His conclusion that the plaintiff made out no case here was right. *Clarke* v. *Second National Bank*, 177 Mass. 257.

The only ground on which the plaintiff argues that the twenty-first ruling should have been given is that Rico relied on Oliver in the matter. But that fact is not found by the auditor and there was no evidence on the seventh and ninth counts except the auditor's report. The twenty-first ruling was refused rightly, and the twenty-second falls with it.†

The twentieth was waived.

The defendants have argued that the evidence warranted the finding that the cigars sold in the Davenport case and the tobacco sold in the Morrill case were the individual property of Hathaway; that the eighth ruling ‡ asked for was wrong, and that the findings on those counts can be supported on that ground; and they have made similar arguments in the other claims of the plaintiff. But a general verdict cannot be supported which rests on one of two alternatives, one of which is left to the jury under a correct ruling and the other under an incorrect one.

---

* The ruling requested was as follows: "24. — Upon all the evidence as a matter of law the plaintiff is entitled to recover upon counts two, three and four." See *ante*, pages 416, 417, 420.

† The requested rulings referred to were as follows:

"21. — Under counts seven and nine upon the facts found by the Auditor, Rico received a preference in the payment of the Torrey note and upon all the evidence the court should infer that a preference was intended.

"22. — Under counts seven and nine the measure of damages is the value of the Torrey note at the time when the preference was made."

‡ The ruling requested was as follows: "8. — Upon all the evidence in the case the appointment of an assignee of Hathaway's separate estate by the Insolvency Court of Bristol County is no defence to any of these defendants in these actions."

The result is that in the several actions there must be the following entries:

In the action against Rico:        *Exceptions overruled.*

In that against Davenport:        *Exceptions sustained on the second, third, fourth, fifth and sixth counts.*

In that against Morrill:        *Exceptions sustained.*

*W. R. Bigelow,* for the plaintiff.

*E. R. Anderson,* (*A. T. Smith* with him,) for the defendants.